**PALESTINE CONTRACTORS, INC.,**
Petitioner,

v.

**Lois PERKINS et al., Respondents.**

No. A–10124.

Supreme Court of Texas.

Dec. 2, 1964.

Rehearing Denied and Dissenting Opinion
Filed Jan. 27, 1965.

B. R. Reeves, Palestine, Garrison, Renfrow, Zeleskey, Cornelius & Rogers, Lufkin, for petitioner.

Johnston & Johnston, Palestine, Helm, Jones & Pletcher, Mabel Grey Howell, Houston, for respondents Mrs. Lois Perkins and F. Perkins.

John B. McDonald, Palestine, for respondent Herman C. Conoway.

Douglas E. Bergman, by John W. Clark, Jr., Dallas, amicus curiae.

GREENHILL, Justice.

This is an action to recover for personal injuries suffered by Mrs. Lois Perkins when a truck belonging to Palestine Contractors, Inc., collided with her automobile. The jury convicted Palestine's driver of several acts of negligence, each of which was a proximate cause of the collision. Herman Conoway, driver of a third vehicle and third party defendant in this suit, was convicted of one act of negligence which was a proximate cause of the collision. Judgment was rendered against Palestine Contractors for $26,500 with recovery over against Conoway for $13,250. The Houston Court of Civil Appeals reformed the judgment for contribution to provide that Palestine recover only to the extent that it *pays* more than one-half of the judgment. As reformed the judgment of the trial court was affirmed. 375 S.W.2d 751; note, 43 Tex.L.Rev. 118 (1964).

Sometime after the collision in question, Mrs. Perkins gave Conoway a covenant not to sue.[1] She agreed not to sue Conoway directly or indirectly but expressly reserved the right to sue Palestine Contractors. There was no agreement to indemnify Conoway against any suit over by Palestine Contractors. The covenant recites a ten-dollar consideration, but it was not paid. Plaintiff's testimony was that the reason for giving the covenant was to help Conoway retain his driver's license which the State was threatening to suspend under the provisions of the Texas Motor Vehicle Safety-Responsibility Act.

The important question to be decided is whether a covenant not to sue given to

1. "FOR AND IN CONSIDERATION of the sum of TEN DOLLARS * * * we, the undersigned, do hereby covenant and agree not to sue, make claim, or institute any action or proceeding directly or indirectly against A. C. CONAWAY or ROBERT LEE CONAWAY to recover damages of any kind or character. * * *

"It is distinctly understood, stipulated and agreed that this instrument is not a release but is only a covenant not to sue * * * and we are not in any manner releasing any cause of action which we have against any third party or parties * * * and it is specifically understood that this agreement does not in any manner prejudice our right to recover damages against any such third party or parties, not a party to this agreement.

"The parties hereto expressly recognize and agree that the aforesaid payment * * * does not compensate the undersigned for their heavy damages * * * it being the intent of the parties hereto that the undersigned shall look for satisfaction for their damages to the Company owning and operating said truck * * *.
" * * *
" * * * we have grave doubts as to whether * * * Conaway * * * was negligent and * * * we believe that the negligence on the part of the said owner and operator of the truck was the chief if not the sole cause of the accident described above."

one of two negligent joint tortfeasors precludes the plaintiff from recovering more than one-half of the damages from the non-settling tortfeasor.

Palestine Contractors, in support of its contention that only one-half of the damages can be recovered against it, relies on a statement in Gattegno v. The Parisian, 53 S.W.2d 1005 (Tex.Com.App.1932), and on an article by Hodges, Contribution and Indemnity Among Tortfeasors, 26 Texas Law Review 150 (1947). The Gattegno case and Mr. Hodges' article will be again referred to. Judge Critz, writing for the Texas Commission of Appeals in Gattegno, said, "Therefore, if it be found that Gattegno and Muir are both active tort-feasors as between each other, the release having discharged Muir as to all liability to The Parisian, has at least discharged one-half its damages." 53 S.W.2d at 1008. The Court of Civil Appeals in this case refers to this statement as dictum, a matter we shall also comment upon later. In any event we have reviewed the principle of law to determine whether or not the statement in Gattegno should be followed.

Perkins relies on a number of Texas cases which state the rule that the non-settling tortfeasor is entitled to credit on the judgment for the amount already paid for the covenant not to sue. Austin Road Co. v. Pope, 147 Tex. 430, 216 S.W.2d 563 (1949); Robertson v. Trammell, 98 Tex. 364, 83 S.W. 1098 (1904); Lottman v. Cuilla, 288 S.W. 123 (Tex.Com.App.1926); Friedman v. Martini Tile & Terrazzo Co., 298 S.W.2d 221 (Tex.Civ.App.1957, no writ); Lone Star State Life Ins. Co. v. Foster, 250 S.W.2d 949 (Tex.Civ.App.1952, wr. ref., n. r. e.); Gillette Motor Transport Co. v. Whitfield, 186 S.W.2d 90 (Tex. Civ.App.1945, wr. ref., w. o. m.); Eckel v. First Nat. Bank, 165 S.W.2d 776 (Tex. Civ.App.1942, wr. ref.); Watkin Music Co. v. Basham, 48 Tex.Civ.App. 505, 106 S.W. 734 (1907, no writ); El Paso & S. R. Co. v. Darr, 93 S.W. 166 (Tex.Civ.App. 1906, wr. ref.). With one exception, it does not appear that the contention was ever made in the above-cited cases that plaintiff's recovery should be limited to one-half of the damages. Without such a contention, a mere holding that credit should be allowed on the judgment does not necessarily conflict with the theory that the judgment should be reduced by one-half.

The one exception mentioned involved co-makers of notes rather than joint tortfeasors. The notes were given for the purchase of a piano. After default of several installment payments, the plaintiff repossessed the piano from one co-maker and gave her a covenant not to sue. The plaintiff then sued the other co-maker alone for the full amount of the notes. The defendant co-maker argued that his liability was only one-half of the value of the notes. The Court of Civil Appeals held that he was liable for the full amount but had a right of contribution against the settling co-maker. That case is similar to the one before us in that no consideration was paid for the covenant not to sue. Watkin Music Co. v. Basham, 106 S.W. 734 (1907), an opinion of a Court of Civil Appeals which did not reach this Court.

In one other case, cited by Perkins, the contention was made by the non-settling defendant that plaintiff's recovery should be for only one-half of the verdict because of plaintiff's settlement with the other tortfeasor. Skyline Cab Co. v. Bradley, 325 S.W.2d 176 (Tex.Civ.App.1959, wr. ref., n. r. e.). In that case the plaintiff had sued both tortfeasors but dismissed one, Mrs. Foster, with whom plaintiff had settled. She still remained in the suit, however, by reason of the non-settling tortfeasor's third-party action to recover for damages to *his* cab. *There was no prayer for contribution.* The jury found both tortfeasors guilty of negligence proximately causing the collision. The Court of Civil Appeals at Houston held:

"[It is] clear that appellants are not in position to insist that the release discharged one-half of the damages

awarded; since appellants made no effort to retain Mrs. Foster [the settling tortfeasor] in the suit and failed to plead over against her and wholly failed to ask for contribution. In these particulars the instant case is distinguishable from the case of Gattegno v. The Parisian * * * relied on by appellants." 325 S.W.2d at 183.

Without again reviewing the wisdom of the distinction made in the Skyline Cab case, we can state that it is distinguishable from the case at bar wherein there is an action for contribution.

It is undisputed that a plaintiff may sue one of several joint tortfeasors and collect the full damages from him. Landers v. East Texas Salt Water Disposal Co., 151 Tex. 251, 248 S.W.2d 731 (1952). It is also undisputed that had Perkins sued Palestine Contractors without agreeing not to sue Conoway, Palestine Contractors would have had to pay the total damages. It could in turn sue Conoway for contribution, either in the same or in a subsequent suit. Here, however, Palestine Contractors contends that Perkins can recover only one-half of the damages against it since Perkins gave up her right to sue Conoway indirectly.

There are three possible solutions to the problem posed by this case: (1) In order to protect the settling tortfeasor from a subsequent suit that destroys the finality of his settlement, and in order to allow the plaintiff a full recovery, we could (but for the Texas Contribution statute) deny the defendant a right to contribution. This is the view of the Uniform Contribution Among Tortfeasors Act § 4(b) (1955), which will be discussed later. However, this result would be clearly contrary to Article 2212, Vernon's Annotated Civil Texas Statutes, which gives to a defendant who has paid more than his share of the damages a substantive right to a proportionate recovery against the other solvent defendants, who in turn retain a right of recovery of a judgment against the insolvent defendants. A plaintiff cannot cut off from a defendant not a party to the settlement the right to contribution by an agreement with a third party.

(2) The rule applied by the Court of Civil Appeals allows the plaintiff to recover from the non-settling defendant the full damages less a credit for the amount of the previous settlement. The non-settling defendant is then allowed to get contribution from the settling tortfeasor, notwithstanding the settlement and regardless of the plaintiff's covenant not to sue indirectly the latter. Under this rule, the tortfeasor who settled is not only faced with the expense of litigation but also with a judgment which, when added to his settlement, raises his loss to what it would have been had he not attempted to settle with the plaintiff. He loses the benefit of the covenant not to sue under which he thought he had bought his peace *unless* he can recover his loss from the plaintiff in a circuitous action for breach of covenant.

Whether plaintiff's suit against the non-settling defendant for more than half of the damages is an indirect suit against the settling tortfeasor is a matter of dispute between the parties. On the one hand the covenant expressly declared that Palestine would be looked to for damages. It is argued that the parties to that instrument must have known that Palestine Contractors would sue Conoway for contribution. On the other hand, the intention of the parties was to release Conoway from the danger of liability so that he might retain his driver's license. This intent would fail if he remained liable for contribution; therefore, it is argued, the parties must have contemplated that Perkins recover only one-half of the damages so that Palestine Contractors would have no right of contribution against Conoway.

(3) The rule expressed in the Gattegno case and explained in Professor Hodges' article would allow the plaintiff to recover only one-half of the damages found by the jury. This rule would give the settlement finality because the non-settling defendant would have no right of contribution since

he is not required to pay more than half of the judgment. Circuity of action would be avoided because the settling tortfeasor would have no occasion to sue the plaintiff to recoup his loss. The unattractive feature of this rule is that the plaintiff will not receive the full compensation to which the jury found him entitled. His total recovery under this method will be as near to total compensation as is the settlement to one-half of the damages. In other words any loss would be due to the plaintiff's own action in settling with one joint tortfeasor in an arm's length transaction.

Plaintiff argues that this result would discourage settlements, especially with those against whom there is a weak case of liability. They contend that the law should permit plaintiff to make relatively small settlements with such parties without thereby substantially reducing his claim against the non-settling tortfeasor. However, as defendant points out, this argument cuts both ways. A defendants' motivation to compromise rather than defend the claim would be lessened because he "cannot count on his adjustment with the injured person as ending the matter but must apprehend a suit at the hands of his co-tortfeasors." Judson v. Peoples Bank and Trust Co., 17 N.J. 67, 110 A.2d 24, at 36 (1954).

Plaintiff counters with the suggestion, and the Court of Civil Appeals agreed, that if the settling tortfeasor wants protection, he should have an indemnity agreement included in the covenant not to sue. See Panhandle Gravel Co. v. Wilson, 248 S.W. 2d 779 (Tex.Civ.App.1952, wr. ref., n. r. e.). But an indemnity agreement only makes more clear what Palestine Contractors contends should be the result without such an agreement where plaintiff covenants not to sue the settling defendant, directly *or indirectly*.

While the outcome of this particular case is important, we have attempted to review the authorities in order to determine the view to be followed not only in this case but in those which will follow. Because of this consideration, or reconsideration, the arguments and authorities are set out in more detail than is ordinarily desirable in an opinion.

The rules among the various states on contribution between joint negligent tortfeasors are strikingly divergent, particularly where there has been a settlement with one tortfeasor. Legal scholars likewise have been unable to agree among themselves on a solution satisfactory to all. Almost half the states have attempted to bring order out of chaos by permitting and regulating contribution among tortfeasors through legislation. 1 Harper & James, The Law of Torts, 719, § 10.2 (1956).

Eight states, not including Texas, have adopted the Uniform Contribution Among Tortfeasors Act. As adopted in 1939 by seven states[2] and Hawaii, the Act reached substantially the same solution as set out by the Court of Civil Appeals in this case. Section 4 and Section 5 of that Act read:

"§ 4. Release; Effect on Injured Person's Claim.—A release by the injured person of one joint tortfeasor, whether before or after judgment, does not discharge the other tortfeasors unless the release so provides; but reduces the claim against the other tortfeasors in the amount of the consideration paid for the release, or in any amount or proportion by which the release provides that the total claim shall be reduced, if greater than the consideration paid." [9 Uniform Laws Annotated 233, 242]

"§ 5. Release; Effect on Right of Contribution.—A release by the injured person of one joint tortfeasor does not relieve him from liability to make contribution to another joint tortfeasor unless the release is given before the right of the other tortfeasor to secure a

2. Arkansas, Delaware, Maryland, New Mexico, Pennsylvania, Rhode Island and South Dakota. Hawaii now, of course, is a state.

money judgment for contribution has accrued, and provides for a reduction, to the extent of the pro rata share of the released tortfeasor, of the injured person's damages recoverable against all the other tortfeasors." [9 U.L.A. 233, 245]

The illustration in the Commissioners' note following Section 4 is similar in many respects to the facts of our case:

"Suppose P is hurt, apparently by the concurrent negligence of A and B. He wishes to pursue his remedy against B but wants to let A off lightly. For $100 paid he releases A and then sues B. The jury might fix P's damages and the court might then deduct $100 from the amount of the verdict before entering judgment. Thus, on a verdict for P against B of $2,000, the court would enter judgment for $1,900. Although this could be handled by introducing evidence before the jury of a payment of $100 and by letting the jury take that into account in fixing P's damages, this method would be less satisfactory than the solution suggested in the previous sentence.

"Under each alternative of the second clause of this Section, A, the tortfeasor to whom a release is given should be credited in any contribution proceedings against him, with the amount by which the injured person's, P's, claim is reduced in accordance with the Section. Thus, if the release mentions no amount or proportion by which P's claim against B is reduced, but A paid P $100 for his release, then if the jury awards P $2,000 damages against B, P should get judgment for only $1,900. Then in B's action against A for contribution, if A does not dispute the amount of P's recovery against B, or, if he disputes it, is unsuccessful in getting that amount lowered as the basis of the claim for contribution, B should be allowed to recover $900 from A as contribution. The explanation is that

the 'common liability' is for $2,000, of which A has already paid $100. In contribution proceedings between two tortfeasors where no apportionment of fault takes place and where the damages of the injured person are $2,000, the paying tortfeasor should be able to shift one-half of the burden, or $1,000, to the non-paying tortfeasor. But if the non-paying tortfeasor had already paid $100 to the injured person, thereby lowering the other tortfeasor's liability by that amount, he should have credit for the payment in contribution proceedings." [9 U.L.A. 242–243]

The Restatement, Torts [first series] which was adopted the same year (Volume 4, 1939) as the Uniform Contribution Act, reaches approximately the same result as the Uniform Act, though it is not as specific. The comments under Section 885 are in part as follows:

"The giving of a discharge, whether in the form of a covenant not to sue or of a release where rights are preserved against another tortfeasor, does not affect any right of contribution or indemnity of such other tort-feasor if subsequently he pays the amount of the claim against him or, in cases of contribution, pays more than his proportionate share." [Ch. 44, Comment on Subsection 2 of § 885, p. 463]

"* * * If it is agreed that the payment is to satisfy the payor's proportion of the total claim, the claim against the others is diminished in that proportion, if this is greater than the amount paid; if the proportion is less than the amount paid, the claim against the others is diminished by the amount paid, irrespective of the agreement." [Ch. 44, Comment on Subsection 3 of § 885, p. 463]

The experience of the Uniform Contribution Act, even among the eight states which adopted it, was not satisfactory. The Act was redrafted in 1955. The Commissioners' Prefatory Notes, Uniform Contribution

Among Tortfeasors Act, Pocket Part for use during 1964, p. 112, says that most of the eight states which adopted the Act "have made important changes in the Act which have defeated the whole idea of uniformity; and in anything like its original form it is in effect only in Arkansas, Hawaii, and South Dakota."

Section 4 and Section 5 of the original act are now replaced by a new Section 4 which reads:

"§ 4. [Release or Covenant Not to Sue].—When a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death:

"(a) It does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide; but it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater; and,

"(b) *It discharges the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor.*" [Emphasis added.] [Uniform Contribution Among Tortfeasor Act, § 4, Pocket Part p. 118.]

The explanation under the new section reveals the discontent with the old section. The Commissioners' Note reads in part:

" * * * Reports from the state[s] where the Act is adopted appear to agree that it has accomplished nothing in preventing collusion. In most three-party cases two parties join hands against the third, and this occurs even when the case goes to trial against both defendants. 'Gentlemen's agreements' are still made among lawyers, and the formal release is not at all essential to them. If the plaintiff wishes to discriminate as to the defendants,

the 1939 provision does not prevent him from doing so.

"The effect of Section 5 of the 1939 Act has been to discourage settlements in joint tort cases, by making it impossible for one tortfeasor alone to take a release and close the file. Plaintiff's attorneys are said to refuse to accept any release which contains the provision reducing the damages 'to the extent of the pro rata share of the released tortfeasor,' because they have no way of knowing what they are giving up. The 'pro rata share' cannot be determined in advance of judgment against the other tortfeasors. In many cases their chief reason for settling with one rather than another is that they hope to get more from the party with whom they do not settle. A provision for reduction in a fixed amount will not protect the settling tortfeasor from contribution. No defendant wants to settle when he remains open to contribution in an uncertain amount, to be determined on the basis of a judgment against another in a suit to which he will not be a party. Some reports go so far as to say that the 1939 Act has made independent settlements impossible. Many of the complaints come from plaintiff's attorneys, who say that they can no longer settle cases with one tortfeasor. Such reports have reached other states, and have been responsible for a considerable part of the opposition to the 1939 Act. The New York Law Revision Commission has introduced a number of bills for contribution acts, and this objection has been the chief factor in defeating them.

"It seems more important not to discourage settlements than to make an attempt of doubtful effectiveness to prevent discrimination by plaintiffs, or collusion in the suit. Accordingly the subsection provides that the release in good faith discharges the tortfeasor outright from all liability for contri-

bution. This is consistent with Section 1(d) above, which provides that the settling tortfeasor has himself no right of contribution against another unless he has assumed the full responsibility to the claimant." [Uniform Contribution Among Tortfeasors Act, § 4, Commissioners' Notes, Pocket Part for use during 1964, pp. 118–119]

Prosser, in the 1964 edition of his Law of Torts, summarizes the experience of the courts and the Uniform Contribution Act by stating the following at page 277:

"The effect of a settlement with the plaintiff by the contribution defendant, in which he received a release or a covenant not to sue, has perhaps given more difficulty than any other problem. The usual holding has been that the defendant so relieved of liability is not released from contribution. There has been much dissatisfaction with this because it becomes impossible for a defendant to settle the case, take a release, and close the file, since the potential liability for contribution is still open. On the other hand, the proposed solution of a pro rata reduction of the amount remaining due discourages plaintiffs from accepting smaller settlements from one defendant. In either case both parties complain. For these reasons the current Uniform Act has gone the whole length of holding that the release discharges the one to whom it is given from all liability for contribution."

It must be agreed that the solution of the 1955 revision of the Uniform Contribution Among Tortfeasors Act has much to recommend it. But since it holds that the non-settling defendant cannot have contribution from the settling defendant, it runs counter to our Contribution Statute, Article 2212. That statute gives the right of contribution. Insofar as the Uniform Act protects the settling defendant, it is in harmony with the language of the Gattegno case.

Francis H. Bohlen, for many years the professor of torts at Harvard and Pennsylvania Law Schools, an author of casebooks and treatises on torts, considers the problem of "Contribution and Indemnity Between Tortfeasors" in a two-part article in Volumes 21 and 22 of the Cornell Law Quarterly. On this particular subject, he says:

"If the injured man settles for a sum which, upon suit against the unreleased tortfeasor, is seen to be less than the proportion of the loss which the released tortfeasor should bear, the injured man who has consented to the settlement should bear the loss of this disparity. He should recover no more from the unreleased defendant than such proportion as the latter would have had to pay had the other delinquent been brought into the action as co-defendant. Thus, if A, the original plaintiff, settles with B, one of the persons liable for his injury, for the sum of one thousand dollars, and in a subsequent action against the other defendant his damages are assessed at ten thousand dollars, A's recovery should be limited to five thousand dollars. A and not C should bear the loss entailed by the inadequate settlement which he has made with B." 21 Cornell Law Quarterly 567 (1936).

Professor Hodges of The University of Texas School of Law, writing in 26 Texas Law Review 150 (1947) on Contribution and Indemnity Among Tortfeasors, says at p. 171:

" * * * As pointed out in the preceding section, a tortfeasor who has settled with an injured party may then proceed against the non-settling tortfeasor for contribution or indemnity. Where the plaintiff is proceeding against the non-settling tortfeasor and contribution is otherwise in order, the

defendant may assert his claim to contribution. * * * If the amount paid under the settlement is less than one-half of the amount of damage, the plaintiff may recover from the non-settling defendant only one-half of the amount set as damages, because plaintiff has accepted the settlement in satisfaction of the settling tortfeasor's liability, and when it is determined that he was equally liable then the liability has been satisfied to the extent of one-half. [Here the Gattegno case is cited in a footnote.]

"Thus if tortfeasor A has paid $6,500 to the plaintiff and in the latter's suit against B the damage is determined to be * * * $13,000, recovery would be $6,500; damage $20,000, recovery $10,000; damage $30,000, recovery $15,000."

A casenote on the opinion of the Court of Civil Appeals in this particular case appears to adhere to Professor Hodges' view. 43 Texas L.Rev. 118 (Nov. 1964).

The Supreme Court of New Jersey was faced with a relatively similar situation and had a statute similar to ours. Without referring to the Gattegno case, Mr. Justice Brennan, now of the Supreme Court of the United States, reached the same conclusion as our Commission of Appeals. He in turn relied upon the language of Mr. Justice Rutledge in McKenna v. Austin [77 U.S.App.D.C. 228, 134 F.2d 659, 148 A.L.R. 1253] by the U. S. Court of Appeals when Justice Rutledge was on that court. Justice Brennan, in Judson v. Peoples Bank & Trust Co., 110 A.2d 24 (1954), gave the court's reasons:

"* * * If the injured party is required to credit only the amount received in settlement * * * he may be tempted to make collusive settlements, a mischief incident to the denial of contribution which was one of the strongest reasons for the statutory change allowing a right of contribu-

tion. Also, the settlement then lacks finality because the settler cannot count on his adjustment with the injured person as ending the matter but must apprehend a suit at the hands of his co-tortfeasors. This would have a stifling effect upon efforts at compromise and settlement, contrary to the policy of our law which strongly favors disposition of disputes by compromise and settlement."

The Court continued:

"* * * Collusive settlements are wholly ineffective when a credit of the settler's pro rata share is the required result of any settlement, and this helps attain one of the objectives of the contribution statute. And, thereby the settling tortfeasor is assured of the finality of his settlement, and impairment of the public policy favoring compromise is avoided." [110 A.2d 24, at 36]

There was a second Judson case in the Supreme Court of New Jersey after Justice Brennan left. The court followed the first Judson holding; but Chief Justice Weintraub expressed a personal preference for the view of the Uniform Contribution Act as revised in 1955. But he noted that this solution must have legislative authorization and that to follow the Uniform Act would do violence to the New Jersey contribution statute [as it would to ours]. So the court was constrained to follow the first Judson decision. 25 N.J. 17, 134 A.2d 761, 770 (1957).

The two New Jersey cases are reviewed in a note in 12 Rutgers Law Review 533 (1958) where it is concluded that,

"* * * it soon becomes clear that no perfect solutions present themselves, and it becomes a question of trying to select the best of several partially satisfactory remedies. Accepting the basic premise that what is to be sought is a blending of the two divergent policies of settlement and contribution, it

would seem that the court has made the best of a difficult situation."

The problem was presented recently to the Court of Appeals for the District of Columbia. That court in Martello v. Hawley, 112 U.S.App.D.C. 129, 300 F.2d 721 (1962), reached the same result as announced in the Judson case:

"Accordingly, we now hold in the factual circumstances of this case that when settlement is made with one joint tort-feasor and later a verdict is obtained against the other, and the jury finds that the settling tort-feasor should contribute, then the verdict should be credited with one-half its total amount and the defendant tort-feasor should be required to pay only the remaining balance, namely, one-half the total original verdict. It is true that in a case like the present one, where the verdict figure is in excess of twice the settlement figure, the application of this formula will necessarily reduce the amount of the injured plaintiff's recovery. However, the answer to objection to the formula on this account is that, by his settlement, the plaintiff has sold one-half of his claim for damages. Anything else would be unfair to the settling tortfeasor, who has bought his peace, and unfair to the defendant tort-feasor, who should not be disadvantaged by a settlement to which he was not a party and to which he did not consent."

◼ We now return to the language of Gattegno v. The Parisian, 53 S.W.2d 1005 (Tex.Com.App.1932). The respondent and the Court of Civil Appeals say that it is dictum and should not be followed. The language appears in the opinion after the Commission of Appeals had determined that the judgments of the courts below should be reversed and the cause remanded to the trial court for a new trial. The Commission of Appeals conceded that the points

then discussed by it had not been raised; but since the case was to be retried, it set out rules to be applied upon a retrial of the case and the results which were to follow upon the finding of certain facts. The Supreme Court approved "the holdings" of the Commission. Whether this sort of instruction by the Commission of Appeals to the trial court is to be described as "dictum" is debatable. In any event, it is judicial dictum, deliberately made for the purpose of being followed by the trial court. It is not simply "obiter dictum." It is at least persuasive and should be followed unless found to be erroneous. Railroad Commission v. Aluminum Co. of America, 380 S.W.2d 599 (Tex.1963), which followed the dictum in the Normanna[3] case; Parker v. Bailey, 15 S.W.2d 1033 (Tex.Com. App.1929); Thomas v. Meyer, 168 S.W.2d 681 (Tex.Civ.App.1943, no writ); 21 C.J.S. Courts § 190, pp. 316, 317.

◼ While there is room for a difference of opinion, the language in the Gattegno case has substantial support from other authorities set out above, and is not without merit. While there is also merit in the holding made by the Court of Civil Appeals in this case, the Gattegno case has been on the books for over twenty years. We think the better course is to follow the Gattegno case. Accordingly, we do so.

It is argued that the Gattegno rule should not apply where the settling defendant is insolvent. The argument is based on an absence of circuity of action and does not take into account the other reasons for the rule. The argument is that a judgment for contribution against the insolvent defendant for one-half is of no practical consequence, and the insolvent settling defendant could not recover anything against the plaintiff on any breach of covenant because he has not been harmed, i. e., he has paid nothing by way of contribution. So there is no circuity of action to be avoided. So, it is argued, the plaintiff should have his full damages from the non-settling defend-

3. Atlantic Refining Co. v. Railroad Commission, 162 Tex. 274, 346 S.W.2d 801 (1961).

ant, less the amount paid by the insolvent settling defendant. While the argument of the plaintiff here invokes with some justification the sympathy of the Court, it does not establish a basis for the non-application of the Gattegno rule.

. The remaining points of error by Palestine may be summarized as follows:

■ 1. Palestine did not get a fair trial because of the combination of the settling tortfeasor and plaintiff against him, the non-settling tortfeasor. It contends that it got "double-teamed." In view of our disposition of the case, any error in this regard is now regarded as harmless.

■ 2. Palestine was deprived of a fair trial because of the refusal of the trial court to excuse for cause a lady member of the jury panel. Palestine kept her off the jury by exercising a peremptory challenge as to her. There was no showing that Palestine, as a result of the trial court's action, was required to take an objectionable person on the jury. The point is overruled.

■ 3. Palestine was deprived of a fair trial because of the admission of evidence of Conoway's lack of financial responsibility. This was the plaintiff's asserted reason for settling with him. But the defendant asserted that this injected insurance *vel non* into the case, the inference being that Conoway had none and Palestine did because no attempt was being made to revoke Palestine's license. Again, in view of our holding, we regard any error in this regard as being harmless.

■ 4. Palestine contends that there was no evidence to support the jury verdict as to future medical expenses. We have examined the record and find there was evidence. The point is overruled.

■ 5. Finally, Palestine complains of the jury argument of plaintiff's counsel. No objection was made to the argument when it was made. It would unduly length-

en this opinion to set it out. It is our opinion that it did not result in an improper verdict.

The judgments of the courts below are reversed and judgment is here rendered for the plaintiff against Palestine Contractors for $13,250 with interest from the date of the judgment of the trial court.

SMITH, Justice (dissenting).

I respectfully dissent. The Texas Contribution Act dealing with joint tortfeasors who are co-defendants was not enacted so that one joint tortfeasor could profit by his own wrong, or to put it another way, so that a tortfeasor could deprive a plaintiff of one-half of his judgment.

The Court has chosen to follow the case of Gattegno v. The Parisian, 53 S.W.2d 1005 (Tex.Com.App.1932), and an article by Hodges, Contribution and Indemnity Among Tortfeasors, 26 Texas Law Review 150, thereby completely ignoring the intention of the Legislature when it adopted Article 2212, The Texas Contribution Act. That Act reads as follows:

"Any person against whom, with one or more others, a judgment is rendered in any suit on an action arising out of, or based on tort, except in causes wherein the right of contribution or of indemnity, or of recovery, over, by and between the defendants is given by statute or exists under the common law, *shall, upon payment of said judgment, have a right of action against his co-defendant or co-defendants and may recover from each a sum equal to the proportion of all of the defendants named in said judgment rendered to the whole amount of said judgment. If any of said persons co-defendant be insolvent, then recovery may be had in proportion as such defendant or defendants are not insolvent; and the right of recovery over against such insolvent defendant or defendants in judgment shall exist in favor of each*

*defendant in judgment in proportion as he has been caused to pay by reason of such insolvency."* [Emphasis added.]

It should be noted that this act provides for contribution upon *payment of the judgment,* the tortfeasor *then* has a *right of action against his co-defendant* or co-defendants and may recover from each a sum equal to the proportion of all the defendants named in said judgment rendered to the whole amount of said judgment. If one defendant is *insolvent,* the burden of contribution is then between other joint tortfeasors who are *not insolvent.*

The Texas Act requires that the injured party receive or be paid his *full satisfaction of the judgment before any joint tortfeasor is entitled to contribution from another tortfeasor.*

The italicized portion set forth above is the only method available in Texas under the provisions of Article 2212, supra. I say this with due deference to the opinion of Professor Hodges and the statements contained in Gattegno. If there is to be *any contribution among joint tortfeasors,* the judgment must be *paid,* and the rule of *pro tanto* satisfaction is applied. If plaintiff has received any settlement, then that *amount* is deducted from the amount the jury determines to be full satisfaction, and judgment is rendered for the balance. The *pro tanto* rule has been adopted in Texas as the method to follow in determining the amount that will give full satisfaction to the injured plaintiff. *No money* was paid to plaintiffs for the covenant not to sue. When this rule is applied there is no question but that plaintiffs are entitled to judgment against Palestine Contractors in the amount of $26,500.

Under the settlement practice in Texas, where a substantial sum of money is involved for settlement purposes with one joint tortfeasor, an indemnity agreement is usually included in the covenant not to sue. This Court points out in the present case

that Palestine Contractors desires to reach the same result without such indemnity agreement where plaintiffs covenanted not to sue the settling defendant, directly *or indirectly.*

It is my position that no right of contribution exists until Palestine Contractors pays the full damages found by the jury in the amount of $26,500. A joint tortfeasor has no right to any contribution until the judgment has been paid, and Palestine Contractors cannot have any contribution from a joint tortfeasor until the judgment is paid. The Gattegno case violates the principal rule of *pro tanto* satisfaction, when its effect is to reduce the judgment in the proportionate amount of settlement received by the injured plaintiff.

In the present case a third party defendant was brought into this case by virtue of the suit filed against Palestine. Palestine knew Conoway was *insolvent* so there was no statutory provision for Palestine to obtain contribution from him. This principle was announced in Lottman v. Cuilla (Tex. Com.App.1926), 288 S.W. 123, and reiterated in Bradshaw v. Baylor University, 126 Tex. 99, 84 S.W.2d 703 (1935).

At 13 Tex.Jur.2d Sec. 26, p. 712, it is said:

"The judgment in an action for contribution must be several, not joint, and should provide for contribution from all the solvent obligors. * * *

"Where contribution among joint tortfeasors is dependent on the right conferred by statute, the judgment should make contribution *conditional on full payment of the judgment in favor of the injured party in the principal action."* [Emphasis added.]

It was a settled principle of law prior to the enactment of Article 2212, supra, that one joint tortfeasor against whom a recovery was had could not compel others, who were equally at fault with him in the commission of the tort, to contribute to

the satisfaction of the judgment rendered against him. When Article 2212, supra, was enacted, it was to give relief among themselves to joint tortfeasors who are co-defendants. The statute did not concern the rights of the injured plaintiff who retained all the rights given to an injured person under the common law. An injured plaintiff could sue all joint tortfeasors or elect to sue only one. It did not require a covenant not to sue from the other joint tortfeasors. The joint tortfeasor who was sued could not implead the other joint tortfeasors as now can be done under the provisions of Article 2212.

In this case, plaintiffs exercised their common law right to sue *one* joint tortfeasor, which they had a right to do in the exercise of their common law rights without reference to giving the insolvent other joint tortfeasor a covenant not to sue. After Palestine Contractors was sued, it exercised a right to implead the other joint tortfeasor under Article 2212, supra, and in so doing it brought in a joint tortfeasor (Conoway), who was *insolvent.* The impleaded joint tortfeasor was one from whom Palestine Contractors could not enforce contribution under the plain terms of Article 2212. The exact status of Palestine Contractors, under Article 2212, supra, was the same as if it were a *sole* defendant insofar as securing any contribution for the damages which would *fully* compensate plaintiffs for the injuries sustained as found by the jury and for which Palestine Contractors was *solely* liable to them under Article 2212, supra. Although, at the time Palestine Contractors impleaded the *insolvent* joint tortfeasor Conoway it knew he was *insolvent,* there was nothing plaintiffs could do to prevent Palestine Contractors from bringing him into this suit. The contribution statute does not say such an insolvent joint tortfeasor cannot be brought into the cause, but there can be no contribution from him, and the burden for payment of damages is spread evenly among the remaining joint tortfeasors. In this case, of course, Palestine Contractors is the only other joint tortfeasor. Palestine Contractors claims and this Court has agreed that it is entitled to a fifty per cent (50%) reduction of the damages—a *right it never had under Article 2212,* supra, with or without the covenant not to sue. The effect of this is to shift the burden of contribution to plaintiffs. There is nothing just or fair in shifting the burden of contribution from a joint tortfeasor where it rightfully belongs to an innocent plaintiff, who, under the law, is, and should be, entitled to *full* compensation for injuries sustained by reason of the wrong committed by the tortfeasors. Such an unreasonable and unjust result should not receive the approval of the Texas courts. There is no reason why the result reached in this case should be the law of Texas. In fact, it has never been declared the law of Texas until the decision in this case was announced.

I reiterate that the plaintiffs were powerless to prevent the insolvent joint tortfeasor from being brought into the cause, yet the covenant not to sue joint tortfeasor Conoway has been interpreted by this Court in such manner as to put Palestine Contractors in a better position than it was under the contribution law because under it Palestine Contractors *never had any right of contribution* from the *insolvent* joint tortfeasor Conoway.

In my judgment the Gattegno case, supra, is certainly distinguishable from the case at bar because there the evidence showed Muir was a *solvent* joint tortfeasor, who could have been found liable and subject to contribution with the other joint tortfeasor. In Gattegno, therefore, the intent of the parties was plainly expressed that Muir should be released from all liability. It is one thing to give effect to the expressed intent of the parties, as in Gattegno. It is another and a totally different thing to give an instrument an effect which is contrary to the expressed intent of the parties, which is what the Court has done in the case at bar. It further appears the release in Gattegno was equivalent to an

indemnity on the part of plaintiff in favor of Muir. In this construction it is further distinguishable from the present case. Moreover, such must be the explanation why the Bench and Bar have not heretofore considered the case authoritative where a plaintiff has executed a covenant not to sue. There have been too many cases decided in the appellate courts, including the Supreme Court in the Bradshaw case, supra, upholding a covenant not to sue one joint tortfeasor in the nearly thirty years elapsing from the time the Gattegno case was handed down.

Palestine Contractors has no right of contribution under the Texas Contribution Act from anyone, and, in particular, contribution from plaintiffs. Palestine Contractors has *no* right to complain of the reformation of the judgment by the Court of Civil Appeals that required Palestine Contractors to *pay* the judgment before it *was entitled* to seek contribution. The Court of Civil Appeals ruled in accordance with the holding of this Court in Strakos v. Gehring, 360 S.W.2d 787 (1962), and in accordance with the provisions of Article 2212, supra. In this case plaintiffs are entitled to the whole loaf, $26,500.00, rather than a one-half loaf, $13,250.00.

I agree with the Court that the outcome of this particular case is important. However, I disagree with the result reached. Should the decision of this case stand, the use of the covenant not to sue is meaningless in cases to protect an injured plaintiff where there are joint tortfeasors, because the injured plaintiff is the person making a contribution to the wrongdoer rather than securing *full satisfaction* for the injury despite the fact the Texas Contribution law provides *only* for contribution between co-defendants. The result of this decision is a judicial change of public policy from one encouraging settlement of lawsuits. This change is not justified from any standpoint.

The use of a covenant not to sue with reservation to sue another joint tortfeasor has been a part of the Texas jurisprudence even prior to the decision in Robertson v. Trammell, 98 Tex. 364, 83 S.W. 1098 (1904), and has been used consistently as evidenced by the many cases found in the law books. Moreover, a covenant not to sue has been used to work out settlements between plaintiffs and defendants that could not have been otherwise worked out. The injured plaintiff, without fear of losing the right for *full compensation* could then proceed to suit with the non-settling joint tortfeasor. But now the public policy, as announced by this Court in the case at bar, is that the *right of contribution* among all joint tortfeasors is paramount to the prior public policy of encouraging settlements. The inference seems to be that under the prior rule, if there was a settlement, it was by collusion between the settling parties.

There is no provision in Article 2212, supra, which permits a percentage reduction of damages before payment of the damages which a jury has awarded to an injured plaintiff. The act contains no provision for contribution between joint tortfeasors as a class.

The Baylor University case, supra, stands for the proposition that a defendant joint tortfeasor may implead a joint tortfeasor into the case so long as it does not delay or inconvenience plaintiff. Palestine Contractors did just that. Since plaintiff could not stop Palestine Contractors, under the law, from the impleading of Conoway into the case, it could not be said there was a breach of covenant either directly *or indirectly.* Conoway got into the case at bar by reason of the direct action on the part of Palestine Contractors, which presently appears to have been a profitable move, because as a non-settling tortfeasor who had not paid to the injured plaintiff a thin dime, it has now secured what is the equivalent of $13,250 from the injured plaintiff. I feel that the law as declared by this Court in Riley v. Industrial Finance Service Co., 157 Tex. 306, 302 S.W.2d 652, 655 (1957), adequately protects Palestine Contractors, in that it eliminates any possi-

bility of unjust enrichment or double recovery. In Riley, this Court said:

> "The rule of law in this state is that a plaintiff having been injured by the same set of circumstances sustains but one injury and may receive but one satisfaction for such injury, although more than one person may contribute to such injury. Hunt v. Ziegler, Tex.Civ.App.1925, 271 S.W. 936, 938(4, 5), affirmed Tex.Com.App., 280 S.W. 546; Bradshaw v. Baylor University, 1935, 126 Tex. 99, 84 S.W.2d 703.

> "It is also the general rule that a valid release of one or more joint tort-feasors by the injured party will release all other tort-feasors contributing to the wrong unless the language of the release is such as to show the intention of the parties thereto that the tort-feasors not parties to the release are not discharged, but that the injured party is reserving his cause of action as to such unreleased wrongdoers. Restatement of the Law, Torts, vol. 4, p. 460, 462, Sec. 885; City of Coleman v. Kenley, Tex.Civ.App.1943, 168 S.W.2d 926, wr. ref. w. o. m.; Eckel v. First Nat. Bank of Fort Worth, Tex.Civ.App.1942, 165 S.W.2d 776, 779, ref.; Harper and James, The Law of Torts, p. 708, Sec. 10.1; Young v. Anderson, 33 Idaho 522, 196 P. 193, 50 A.L.R. 1056, 1072; 148 A.L.R. 1270, 1281; 36 Tex.Jur. 823, et seq."

Is this Court now overruling all of the previous law that involves a covenant not to sue? If so, on what ground? It has heretofore been pointed out there is *no contribution* under Article 2212, supra, except among joint tortfeasors and then only after payment of judgment. The rule establishing the amount paid by one joint tortfeasor in consideration of a covenant not to sue is a *pro tanto satisfaction of judgment,* and is the one that was adopted in Baylor University v. Bradshaw, (Austin Tex.Civ.App., 1932) 52 S.W.2d 1094, and the manner of application applied in Bradshaw v. Baylor University, supra. It is thusly stated in an annotation on the subject, 104 A.L.R. 931, 932 as follows:

> " * * * it has, accordingly, been held that the amount paid by one tort-feasor to an injured person in consideration of a covenant not to sue (*or a release not effective as a full release of the other tort-feasor*) is to be regarded as a satisfaction pro tanto as to another or other tort-feasors liable for the same injury or wrong, so as to reduce the amount of damages recoverable from such other tort-feasor or tort-feasors." [Emphasis added.]

In Bradshaw v. Baylor University, supra, Bradshaw was paid $6,500 for a covenant not to sue by the railroad company. When Bradshaw brought suit against Baylor University, it resulted in the jury awarding Bradshaw $6,500 damages, which would compensate him down to the date of trial. This was the exact amount he had been paid by the railroad company. In considering the narrow question, this Court said:

> " * * * What right has Bradshaw, who has been fully compensated for his injuries, to recover further damages? The only answer which accords with justice and the authorities is that he has none. The jury found that $6,500, if paid at the date of trial, would compensate him for the injuries sustained. He had theretofore been paid that exact amount. It is a rule of general acceptation that an injured party is entitled to but *one satisfaction for the injuries sustained by him.* That rule is in no sense modified by the circumstance that more than one wrongdoer contributed to bring about his injuries." [Emphasis added.]

The jury in that case had found both Baylor and the railroad company guilty of active negligence.

In the present case, there was *no* money paid for the covenant not to sue by Cono-

way. In the exercise of plaintiffs' rights under the common law to bring suit against Palestine Contractors, that reservation in the covenant not to sue is equivalent to *no* consideration because it was a right conferred by law. The delivery of the covenant not to sue Conoway had *no* consideration because such a right not to sue all joint tortfeasors is again a right to bring suit without *all* joint tortfeasors under the common law. The covenant not to sue specifically provided it was *not a release*. Article 2212, supra, speaks only of joint tortfeasors, and the law confers on joint tortfeasors the right of contribution between themselves if the joint tortfeasors are of the class of tortfeasors who are entitled to contribution. Since Conoway was not of a class of joint tortfeasors from whom Palestine Contractors had any right to receive contribution, it was not sufficient to merely show Conoway was a joint tortfeasor, proof must also be made that Conoway was solvent. The proof in this case shows Conoway was *insolvent*. Thus, there is *no* consideration which supports any right of Palestine Contractors for contribution.

If it had been the intention of plaintiffs to release Conoway of all damages, it could have been plainly stated in the covenant not to sue as was done in the Gattegno case, where it was plainly stated: " * * * Earnest does release and discharge the said John T. Muir from any claims or causes of action * * * growing out of the erection and completion of said partition." The only proof Conoway had to give to the Department of Public Safety was the covenant not to sue Conoway executed by plaintiffs. The covenant not to sue is clearly one showing plaintiffs were looking only to Palestine Contractors for *full* compensation for the damages suffered by plaintiffs by reason of the collision. If it had been intended to give Conoway a full release, there would have been no difficulty in putting such release into the covenant not to sue. There is absolutely *no* consideration flowing to plaintiffs by rea-

son of the covenant not to sue. As a matter of law, Palestine Contractors has no right of contribution from anyone in the present case.

I submit that all disputed fact issues have been found in favor of plaintiffs by a presumed finding in favor of plaintiffs when the judgment rendered by the trial court awarded plaintiffs judgment against Palestine Contractors in the amount of $26,500 and in favor of Palestine Contractors against Conoway for one-half of that amount. Palestine Contractors is required under Article 2212, supra, to pay the sum of the judgment to plaintiffs before Palestine Contractors has any right to contribution. Contribution was not involved in the Gattegno case. There two joint tortfeasors were parties defendant in that suit, and Muir had a release from the plaintiff; so, when the jury found the damages, the plaintiff had there released fifty per cent of the damages to Muir, if he was found guilty of active negligence. But if Muir was guilty of passive negligence, any money paid to plaintiff would be deducted from the judgment so that plaintiff could not receive a total amount that exceeded the sum the jury awarded for *full compensation*. If Muir was guilty of only passive negligence, the defendants were not in *pari delicto*, so there could be no contribution between the two joint tortfeasors.

Palestine Contractors had a fair trial and the financial responsibility of Conoway was a matter of proper proof. Palestine Contractors should be relegated to seek contribution from Conoway only after the *judgment in full has been paid to plaintiffs*. Plaintiffs did not agree to indemnify Conoway under the covenant not to sue him. Palestine Contractors brought Conoway into this suit. Plaintiffs have not breached the covenant not to sue. Palestine Contractors is in the position of the wrongdoer, and certainly is not permitted, under the law, to profit from its wrong. But that is exactly what happened when this Court reduced the judgment by fifty per cent and

thus deprived plaintiffs of full satisfaction to which they are entitled under the law.

I have been unable to find any Texas case which supports the line of reasoning in the Gattegno case. As a matter of fact, I believe Gattegno was repudiated by the Court of Civil Appeals and this Court in the Bradshaw case.

Chief Justice McClendon, for the Court of Civil Appeals in the Bradshaw case, said in regard to Article 2212:

"* * * modifies the rule against contribution among joint tort-feasors, *but to a very limited extent. This article manifests great care in its wording, and evidences a thorough familiarity of its authors with the subject dealt with. By express language its operation is limited to cases in which a judgment has been rendered against two or more joint tort-feasors, among whom no right of indemnity or contribution otherwise exists, and one of them has discharged the judgment. The right of contribution is expressly limited* to codefendants, regardless of whether others, not sued, might also be liable. The caption of the original act (Laws 1917, p. 360, c. 152), of unusual brevity and marked clarity and precision, carries the same limitation. It reads: 'An Act granting the right of contribution among defendants in judgment in cases arising out of tort and declaring an emergency.'

"'* * * There is no reason to hold the Legislature meant to exclude from the benefits of the statute those cases where, as here, the plaintiff did not elect to sue all the tort-feasors; but every consideration impels us to hold that the defendant sued may, and should be allowed to, bring in other wrongdoers, provided he does so in such way as not to delay or otherwise prejudice the plaintiff's case.'

"* * * To hold that the statute entirely abrogates the common-law rule against contribution among joint tort-feasors appears to the writer as 'a clear instance of unwarranted interference with legislative prerogative' (Speer on Law of Special Issues, p. 419), and this, not in a matter of mere court procedure, but upon a subject of substantive law dealing with an immemorially recognized principle of public policy. The decision, if limited to the exact question before the court, would extend the right of a defendant beyond the express limitations of the statute, no further than to authorize the impleading of one joint tort-feasor by a defendant joint tort-feasor, where this may be done without delay or inconvenience to plaintiff; and we would be loath to give the opinion further authoritative effect." [Emphasis added.]

Again I contend that the rule announced by this Court speaking through Mr. Justice Griffin in the Riley case adequately protects such joint tortfeasors as Palestine Contractors. In the Riley case, 302 S.W.2d at p. 656, it was said that:

"It is the settled rule of law that any judgment rendered against one or all of the defendants must be credited with the *amount of money* received by plaintiffs in their settlements with other original defendants." [Emphasis added.]

In speaking of plaintiffs' cause of action against the joint tortfeasors, this Court in the Riley case said:

"There being but one injury for which plaintiffs can receive but one satisfaction, defendants are entitled to have credited on the judgment against them *all sums* paid by others also liable to plaintiffs for the damages resulting from the *common* acts of all tort-feasors." [Emphasis added.]

In support of this holding we cited with approval the cases of Eckel v. First Nat. Bank of Fort Worth, Tex.Civ.App. (1942), 165 S.W.2d 776, 779, wr. ref.; McMullen

v. Coleman, Tex.Civ.App. (1940), 135 S.W.2d 776, 778, no writ hist.; City of Coleman v. Kenley, Tex.Civ.App. (1943), 168 S.W.2d 926, wr. ref., w.o.m.; and City of Coleman v. Smith, Tex.Civ.App. (1943), 168 S.W.2d 936, wr. ref.

To apply Article 2212, supra, any other way would be to prevent a plaintiff from recovering his *entire* damages from the joint tortfeasors. This is true, because Article 2212 does not attempt to *legislate* as to plaintiff's cause of action, but *legislates solely* as to the rights of defendants *among themselves*.

How this Court can take the Gattegno case and the article by the distinguished Professor Hodges as guides in solving the present case is beyond my comprehension.

I cannot believe that Professor Hodges' article can be construed to mean that in every case where a covenant not to sue has been entered into between the plaintiff and one joint tortfeasor, the other tortfeasor is entitled to make the plaintiff pay one-half of the judgment.

Professor Hodges begins his article with an illustration which demonstrates that his article is concerned primarily with the plight of "wrongdoers"—tortfeasors—in the adjustment of their affairs.

Professor Hodges, in the beginning of his article says:

"Historically neither the common law courts nor the legislative bodies have been sympathetic with the plight of wrongdoers in the adjustment of their affairs. Prosser clearly illustrates this with his recital of the Highwayman's case, [Everet v. Williams, Ex. (1725), 9 L.Q.Rev. 197 (1893)] where one highway robber sued another robber for an accounting of plunder obtained by a joint venture. The court dismissed the bill with costs adjudged against plaintiff's counsel, held plain-tiff's solicitors in contempt of court, fined one 50£ deported the other, and had both plaintiff and defendant beheaded. As Prosser says: 'In short, contribution was not allowed.' "

Mr. and Mrs. Perkins, plaintiffs in this case, surely should not be classed as robbers merely because they signed a covenant not to sue Conoway, and are now endeavoring to collect a judgment awarded them by a jury and a trial judge. They have not been beheaded, but they have been relieved of their wallets, that is, fifty per cent of their money judgment.

It has been argued that collusion would be easy if plaintiffs are allowed to collect their full judgment against the remaining tortfeasor or tortfeasors. There is no basis for such argument. No more so than if it were argued that tortfeasors could get together under the present decision, one of the tortfeasors settle with the plaintiff for $5,000, and thereafter, the plaintiff's judgment against the other for $100,000 is cut in half because of the settlement and agreement not to sue.

The Court in its opinion recognizes that the Uniform Contribution Act runs counter to the Texas Contribution Statute, Article 2212, supra, but the effect of the decision is to adopt the philosophy of the Uniform Act, by allowing contribution from the plaintiff in the sum of 50% of his judgment. The Court quotes Prosser wherein it was said that there has been much dissatisfaction with the holding (in Texas) that a defendant relieved of liability by a covenant not to sue is not released from contribution. I would like to ask who is dissatisfied? Why should a tortfeasor be relieved of bringing another tortfeasor into the case, or after payment of the judgment, filing a suit against the other tortfeasor?

I would affirm the judgment of the Court of Civil Appeals.