Opinion issued April 17, 2008













In The

Court of Appeals

For The

First District of Texas






NO. 01-06-00569-CV






GEOFFREY KLEIN AND BAYLOR COLLEGE OF MEDICINE, Appellants


V.


CYNTHIA HERNANDEZ, AS NEXT FRIEND OF NAHOMY
HERNANDEZ, A MINOR, Appellee






On Appeal from the 152nd District Court

Harris County, Texas

Trial Court Cause No. 2003-49449





OPINION CONCURRING ON REHEARING


 I respectfully concur in the panel's judgment on rehearing. 


Baylor's Appeal


 In a portion of its opinion on rehearing, the majority holds that we have no
jurisdiction under Texas Civil Practice and Remedies Code section 51.014(a)(5) over
the appeal of appellant Baylor College of Medicine ("Baylor")--that is, that we have
no jurisdiction to the extent that Baylor appeals the denial of its summary-judgment
ground that sought judgment based on appellant Dr. Geoffrey Klein's immunity from
individual liability. See Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(5) (Vernon
Supp. 2007). The majority correctly bases this holding on the Texas Supreme Court's
recent opinion in Texas A&M University System v. Koseoglu, in which the supreme
court indicated that an entity like Baylor would not be considered a "person" within
the meaning of section 51.014(a)(5). (1) See 233 S.W.3d 835, 843 (Tex. 2007). 

 What the panel does not acknowledge, however, is that the language from
Koseoglu on which it relies is dictum, not a holding. I write separately to explain
why, despite the fact that the relied-upon language from Koseoglu is dictum, I agree
that we must follow it here. I also write respectfully to request that the Texas
Supreme Court revisit this and other dictum from Koseoglu.


A. What We Held Before

 Section 51.014(a)(5) provides that "[a] person may appeal from an
interlocutory order" that "denies a motion for summary judgment that is based on an
assertion of immunity by an individual who is an officer or employee of the state or
a political subdivision of the state . . . ." Tex. Civ. Prac. & Rem. Code
Ann. § 51.014(a)(5) (Vernon Supp. 2007) (emphasis added). On original submission,
we held that we had jurisdiction under section 51.014(a)(5) over Baylor's appeal from
the denial of its summary-judgment motions based on Dr. Klein's immunity from
individual liability. See Klein v. Hernandez, No. 01-06-00569-CV, 2007 WL
2264539, at *9 (Tex. App.--Houston [1st Dist.] Aug. 3, 2007), withdrawn, No. 01-06-00569-CV (Tex. App.--Houston [1st Dist.] Apr. 17, 2008, no pet. h.). We
reasoned that, although the term "person" in the preliminary text of section 51.014(a)
is not defined, reading "person" to be broader than just the "individual" on whose
immunity from liability the summary-judgment motion was based comported with the
statutory definition of "person" that applies to the Texas Civil Practice and Remedies
Code generally. Id. at *8. Under that definition, "person" includes "'corporation,
organization, government or governmental subdivision or agency, business trust,
estate, trust, partnership, association, and any other legal entity.'" Id. (quoting Tex.
Gov't Code Ann. § 311.005(2) (Vernon 2005)). That definition, we determined on
original submission, was broad enough to include Baylor. Id. at *9.

B. What Our Implicit Reasoning Was

 At the heart of our reasoning concerning section 51.014(a)(5) was the
fundamental understanding that the term "person" in the preliminary text of section
51.014(a) is independent of, and not limited by, any language within any of the
subsections following it. This understanding is consistent with the grammatical
structure of section 51.014(a). The preliminary text contains the subject, verb, and
object that apply to all subsections: "A person [the common subject] may appeal [the
common verb] . . . an interlocutory order [the common object] . . . that . . . ." The
common subject "person" is modified by nothing. The subsections, in contrast, are
alternative restrictive clauses that modify the common object of the sentence: they are
11 alternative phrases that each modify the common object "order." Thus, any
descriptive language within each of the subsections of section 51.014(a) cannot, as
a matter of grammar, modify the common subject of the sentence--"person," in the
preliminary language of section 51.014(a). Rather, that descriptive language within
the subsections modifies either the sentence's common object ("order") or modifies
phrases that modify that common object. 

 For example, regarding subsection (5), the entire statutory sentence can be
broken down as follows:


 Subject: A person


 Verb: may appeal


 Object: an interlocutory order


 Compound restrictive clause

 modifying the object: that denies a motion for summary
judgment that is based on an assertion
of immunity by an individual who is an
officer or employee of the state or a
political subdivision of the state.


Within the restrictive clause that modifies "order," there are multiple restrictive
clauses or prepositional phrases, each of which modifies a phrase that, eventually,
serves to modify the sentence's object. Grammatically speaking, the restrictive clause
"who is an officer or employee of the state or a political subdivision of the state"
simply cannot be read to modify the common subject "person"; rather, it can modify
only the word "individual." This understanding was reflected, albeit not expressly
analyzed, in the conclusion reached in our previous opinion.

C. What Koseoglu Did

 I set out the bases for our prior opinion's express holding and its implicit
reasoning concerning section 51.015(a)(5) because, in the later-issued Koseoglu,
there is dictum appearing both to support and to undermine that holding and
reasoning. For example, in one portion of dictum, the Koseoglu court reasons:

 The text of Section 51.014(a) makes it clear that the "who" [who may
appeal] applicable to each subsection is the term "person" that appears
at the beginning of the statute. There is no indication that the phrase[]
"an individual who is an officer or employee of the state" . . . in
Section[] 51.014(a)(5) . . . [is] intended to modify the term "person." 
Instead, those phrases and others in the various subsections of the statute
describe exactly "what" may be appealed from an interlocutory order.


Koseoglu, 233 S.W.3d at 842. (I refer herein to the above-quoted dictum as "the First
Dictum.") The First Dictum recognizes that the term "person" in the preliminary text
of section 51.014(a) (i.e., the statutory sentence's common subject), which defines the
entity or person whom the statute allows to appeal, is not modified or limited by the
descriptive text that appears within the subsections following it. That is, for purposes
of section 51.014(a)(5), the meaning of "person" is not limited in any way by the
phrase "an individual who is an officer or employee of the state or a political
subdivision of the State." Our previous interpretation of section 51.014(a)(5) is in
accord with the First Dictum of Koseoglu.

 But further dictum in Koseoglu appears to undermine our previous
interpretation of section 51.014(a)(5). In particular, the Koseoglu court reasoned:

 For example, . . . there is no other way to read Section 51.014(a)(5) than
to conclude that only an "individual who is an officer or employee of the
state or a political subdivision of the state" may appeal an interlocutory
order denying a motion for summary judgment. The only other entity
that would generally have standing to file such an appeal would be a
governmental body, but the words of Section 51.014(a)(5) offer no
indication or suggestion that it applies to any entity other than a state
official, the only entity which it describes. This stands to reason
because an official sued in his individual capacity would assert official
immunity as a defense to personal monetary liability, which is well
suited for resolution in a motion for summary judgment.


Id. at 843. (I refer herein to the above-quoted dictum as "the Second Dictum.") The
Second Dictum indicates that the term "person" in the preliminary text of section
51.014(a) is not to be read independently, but should instead be read as being limited
by the phrase "an individual who is an officer or employee of the state or a political
subdivision of the state" that appears in subsection (5). That is, in the Second
Dictum, the Koseoglu court views a modifier ("an individual who is an officer or
employee of the state or a political subdivision of the state") of the statutory
sentence's object ("order") as also modifying the sentence's subject ("person"). See
id.

 These dicta contradict one another. Specifically, in the Second Dictum, the
court indicates that the restrictive language used in subsection (5) to describe the
motion on which the ruling is made also describes the person who may appeal that
ruling. This is the opposite of the relationship that the First Dictum, which was based
on the statutory sentence's grammatical structure, views the two phrases to have. I do
not believe that these two dicta can be reconciled.


 One of the reasons for the Second Dictum's departure from the statutory
sentence's grammatical structure, and for the resulting contradiction in Koseoglu's
dicta, appears to be the court's conflation within the Second Dictum of two distinct
concepts affecting appellate jurisdiction: (1) one's standing to appeal a ruling because
one has a justiciable interest in that ruling, in the abstract, and (2) one's designation
under the interlocutory-appeal statute to take the appeal, whether one has a justiciable
interest in the ruling or not. The two concepts represent only two of at least four
ways in which an appellate court may lack jurisdiction over an appeal. For example,
in the case of an interlocutory appeal such as this, an appellate court will lack subject-matter jurisdiction if (1) the appeal is untimely filed; (2) (2) the appeal is rendered moot
after its proper perfection; (3) (3) the appellant lacks standing to complain of the
interlocutory ruling that is appealed; (4) or (4) no statute or rule allows an interlocutory
appeal by that person or from that ruling. (5) Each of these grounds is, as a general rule,
independent; the existence of any one deprives the appellate court of jurisdiction over
the interlocutory appeal.

 In the First Dictum, the Koseoglu court does not mention standing (or
justiciable interest) to appeal the ruling mentioned in subsection (5), but instead
gleans the statute's meaning solely from its grammatical structure, reasoning that the
term "person," which designates whom the statute allows to appeal, is not restricted
by any language in subsection (5)--or in any other subsections, for that matter. 
Koseoglu, 233 S.W.3d at 842. In contrast, in the Second Dictum, the Koseoglu court
injects into its reasoning the concept of who has standing (or a justiciable interest) to
appeal and then blends that jurisdictional concept with the independent jurisdictional
concept of whom the statute allows to appeal. See id. at 843 (employing term
"standing" and speaking in those terms, as well as considering that subsection (5)
allows appeals only from denials of the referenced summary-judgment motion). The
Second Dictum thus reflects a view that the Legislature intended two things for each
subsection of section 51.014(a): (1) that the sentence's common subject ("person")
be limited only to those who have a justiciable interest to appeal the ruling described
in the particular subsection and (2) that those who have a justiciable interest to appeal
the ruling described in the particular subsection be limited to those who are named
or necessarily implied within that subsection. See id. 

D. Why I Believe that the Dicta in Koseoglu Should Be Revisited

 There are three reasons why I believe that the First Dictum of Koseoglu
correctly interprets section 51.014(a)(5) and that the Second Dictum does not. First,
as explained above, the First Dictum comports with section 51.014(a)'s grammatical
structure. 

 Second, under the Second Dictum of Koseoglu, the common subject "person"
could mean different things depending on the subsection with which it is being read. 
In my view, it is doubtful that the Legislature intended for the common subject of
section 51.014(a) to mean different things when applied to different subsections of
the same section. 

 Third, implicit in the Second Dictum's merging the concepts of standing to
appeal and the statutory right to appeal is the view that the Legislature, in section
51.014(a), intended to declare who has a justiciable interest to challenge certain
orders on appeal--in every case and under any possible set of facts. The purpose of
section 51.014(a) is not to do this; rather, its purpose is to provide what orders may
be appealed interlocutorily. Cf. Bally Total Fitness Corp. v. Jackson, 53 S.W.3d 352,
365 (Tex. 2001) ("The purpose of section 51.014(a)(3) of the Texas Civil Practice and
Remedies Code, which allows interlocutory appeals of certain class-certification
rulings, is to ensure that the costly process of a class action, with its attendant
potential for irremediable harm to a defendant, does not proceed when there is no
basis for certifying a class."). I glean this purpose from the fact that the Legislature
(1) employed the very broad term "person" to describe who can appeal the orders
listed in section 51.014(a)'s subsections; (2) structured the overall section so that,
grammatically, the term "person" is not limited by anything; and (3) focused each
subsection on a particular type of order that can be appealed interlocutorily. Reading
section 51.014(a)'s plain language, I simply see no intent by the Legislature to decree
which entities have a justiciable interest in appealing the listed orders.

 And although the concepts of standing to appeal and the statutory right to
appeal often overlap, this is not always the case, as they truly are independent
concepts. Here, for example, Baylor (which was a party below before non-suit)
asserts that it has a justiciable interest in pursuing an appeal of the denial of its
summary-judgment motions based on the immunity from individual liability of Dr.
Klein, its employee, because Baylor (1) could be liable under a respondeat superior
theory if the non-suit is invalid and (2) may eventually have to indemnify Dr. Klein
under statute even if the non-suit is valid. (6) The majority correctly does not reach the
merits of these standing arguments in its opinion, and I likewise do not reach them
here. But I note that if Baylor is correct that it has standing, in the abstract, to contest
a judgment rendered against its employee in his individual capacity, then a problem
arises in interpreting section 51.014(a)(5)--as the Second Dictum of Koseoglu
does--so that the only entity with standing to appeal is the one named in that
subsection, i.e., the individual employee. A more reasonable interpretation is that the
Legislature employed the very broad term "person" as section 51.014(a)'s common
subject exactly because the Legislature did not wish to determine who has standing
to appeal the designated rulings--so that the statute's focus would not be on who had
a justiciable interest in appealing a ruling, but would instead be on what rulings could
be appealed.


E. Why I Nonetheless Agree with the Majority's Disposition

 "Dictum is not binding as precedent under stare decisis." Edwards v. Kaye, 9
S.W.3d 310, 314 (Tex. App.--Houston [14th Dist.] 1999, pet. denied). Nonetheless,
"there is an exception to the precedential value of dictum depending on how it is
classified, obiter dictum or judicial dictum." Id. "Judicial dictum, a statement by the
supreme court made very deliberately after mature consideration and for future
guidance in the conduct of litigation, is 'at least persuasive and should be followed
unless found to be erroneous.'" Id. (quoting Palestine Contractors, Inc. v. Perkins,
386 S.W.2d 764, 773 (Tex. 1964)). Were the Second Dictum of Koseoglu merely
obiter dictum, I would dissent from the majority's holding based on it, arguing that
our holding on rehearing should comport with Koseoglu's First Dictum, as did the
relevant holding in our original opinion. 

 However, I conclude that the Second Dictum from Koseoglu is judicial dictum
that best predicts the supreme court's interpretation of section 51.014(a), generally,
and of subsection 51.014(a)(5), specifically. I reach this conclusion because the
Koseoglu court used similar reasoning to support its actual holding concerning
section 51.014(a)(8):

 Section 51.014(a)(8) differs from Section[] 51.014(a)(5) . . . because, by
its plain language allowing for interlocutory appeals of orders granting
or denying pleas to the jurisdiction, it cannot be read as applying solely
to a governmental unit, the entity which it describes. Interpreting
"governmental unit" to modify the term "persons," as Koseoglu would
have us do, would preclude an aggrieved plaintiff, who is plainly not a
governmental unit, from bringing an interlocutory appeal to challenge
the grant of a jurisdictional plea. This would be inconsistent with the
express language of Section 51.014(a)(8). It would be irrational for the
Legislature to have intended that a governmental unit be the only
"person" who may appeal from an interlocutory order because a
governmental unit would have no reason to appeal the grant of a plea to
the jurisdiction. For the entire phrase "grants or denies" to be given
effect, the statute must allow an appeal to be filed by both a
non-governmental plaintiff challenging the grant of a plea to the
jurisdiction and a governmental defendant challenging the denial of one.


Koseoglu, 233 S.W.3d at 843. This reasoning views descriptive words within a
subsection to modify not only the sentence's object ("order"), but also, in effect, to
modify the sentence's subject ("person"). Put another way, the reasoning restricts the
meaning of "person" (the "who" who may appeal) based on terms that modify "order"
(the "what" that may be appealed). And without expressly saying so, the subsection-(8) reasoning, by focusing on the phrase "grants or denies," also blends together the
distinct concepts of who has a justiciable interest in appealing the referenced ruling
and whom the statute authorizes to appeal. Accordingly, this reasoning falls in line
with the Second Dictum in Koseoglu concerning section 51.014(a)(5). For this
reason, I view the Second Dictum as judicial dictum, not mere obiter dictum. I thus
further agree that we must follow it. (7) See Edwards, 9 S.W.3d at 314.

 For the reasons set out above, however, I respectfully request that the Texas
Supreme Court revisit its dicta concerning section 51.014(a)(5), and the equivalent
reasoning supporting its holding under section 51.014(a)(8), from Koseoglu.

Dr. Klein's Appeal


 I also respectfully concur in that portion of the judgment that dismisses Dr.
Klein's appeal. I do so because I do not read Texas Health and Safety Code section
312.007(a) or Texas Civil Practice and Remedies Code section 51.014(a)(5) as
narrowly as the majority does. See Tex. Civ. Prac. & Rem. Code Ann.
§ 51.014(a)(5); Tex. Health & Safety Code Ann. § 312.007(a) (Vernon 2001).


A. What Section 51.014(a)(5)'s Requirements Are

 Texas Civil Practice and Remedies Code section 51.014(a)(5) has two
requirements for appellate jurisdiction to attach: (1) that the denied summary-judgment motion be "based on an assertion of immunity" by an individual and (2) that
that individual be "an officer or employee of the state or a political subdivision of the
state." See Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(5). If either of these
requirements is missing, we lack jurisdiction over the interlocutory appeal.

B. In What Circumstances a Private-Supported-Medical-School Employee
Can Meet Section 51.014(a)(5)'s Requirements for Interlocutory Appeal


 A private-supported-medical school is obviously not the "state or a political
subdivision of the state." Accordingly, the employee of such a private school cannot
actually be an employee of the state or its political subdivision. Normally, one who
is not actually a state employee cannot assert an immunity defense to his personal
liability. See, e.g., Univ. of Houston v. Clark, 38 S.W.3d 578, 580 (Tex. 2000)
("Official immunity is an affirmative defense that protects government employees
from personal liability.") (emphasis added). But to my mind, if a separate statutory
provision requires that a private-supported-medical-school employee be treated as if
he were a governmental employee in certain circumstances, and if those
circumstances exist in a given case, then the employee may be treated as if he were
a governmental employee in that case. I view Texas Health and Safety Code section
312.007(a) as a statute falling into this category. Specifically, I read section
312.007(a) to allow such a private employee to invoke legal principles or defenses
that are available only to governmental employees (such as the affirmative defense
of official immunity from liability) for the purpose of determining his liability in a
given case. It flows naturally from this reading that if the "governmental" legal
principle or affirmative defense that the private employee invokes is based on
immunity from individual liability (such as the affirmative defense of official
immunity from liability), he should be able to appeal the denial of a summary-judgment motion based on that legal principle or affirmative defense under section
51.014(a)(5). See, e.g., Koseoglu, 233 S.W.3d at 841 ("Had [the governmental
official] filed a motion for summary judgment based on an assertion of official
immunity, he clearly would be permitted under Section 51.014(a)(5) to appeal an
interlocutory denial of his motion for summary judgment."); see also Baylor Coll. of
Med. v. Hernandez, 208 S.W.3d 4, 10 (Tex. App.--Houston [14th Dist.] 2006, pet.
denied).

 Section 312.007(a) is part of Texas Health and Safety Code chapter 312, which
expressly requires that private-supported-medical schools be considered
governmental units for limited purposes. One of those limited purposes, found in
section 312.007, involves claims against the employees (or directors, trustees,
officers, interns, residents, fellows, faculty members, or other associated health care
professionals) of supported-medical schools in their individual capacity:

 § 312.007. Individual Liability

 (a) A . . . supported medical . . . school . . . is a state agency,
and [an] . . . employee of a . . . supported medical . . . school . . . is an
employee of a state agency for purposes of Chapter 104, Civil Practice
and Remedies Code, and for purposes of determining the liability, if any,
of the person for the person's acts or omissions while engaged in the
coordinated or cooperative activities of the . . . school . . . .


 (b) A judgment in an action or settlement of a claim against a
. . . supported medical . . . school . . . under Chapter 101, Civil Practice
and Remedies Code, bars any action involving the same subject matter
by the claimant against [an] . . . employee of the . . . school . . . whose
act or omission gave rise to the claim as if the person were an employee
of a governmental unit against which the claim was asserted as
provided under Section 101.106, Civil Practice and Remedies Code.

Tex. Health & Safety Code Ann. § 312.007 (Vernon 2001) (emphasis added).

 There are thus three situations in which section 312.007 treats a private-supported-medical school's employee (or its director, trustee, officer, intern, resident,
fellow, faculty member, or other associated health care professional) as if he were an
employee of a governmental unit: 



 1. when certain situations that could allow for indemnification of the
employee exist; (8)


 2. when determining whether the employee could be individually
liable for his acts or omissions occurring during certain types of
the school's activities; (9) and 


 3. when a judgment is rendered or a settlement is made against the
employer-school, in which case any action against the employee
involving the same subject matter is barred. (10)


 The second benefit of section 312.007--created by the phrase "[an] . . .
employee of a . . . supported medical . . . school . . . is an employee of a state agency
. . . for purposes of determining the liability, if any, of the person for the person's acts
or omissions" in section 312.007(a)--is the relevant one for purposes of this appeal. 
The majority reads this second benefit of section 312.007(a) as a "grant of limited
liability," (11) without further explanation. That is, the majority reads this provision of 
section 312.007(a) to treat private-supported-medical-school employees as if they
were governmental employees solely for the purpose of granting them a damages cap
that might be available to governmental employees. For this reason, the majority
concludes that whatever section 312.007(a)'s second benefit confers, that benefit
cannot be "based on an assertion of immunity by an individual who is an officer or
employee of the state or a political subdivision of the state," as required for us to have
jurisdiction under section 51.014(a)(5).


 I do not disagree that the second benefit of section 312.007(a) could
theoretically encompass a limitation on liability (such as a damages cap), if it applies
in a given case and if that benefit would be available to a governmental employee in
the particular circumstances. What I disagree with is the majority's position that
section 312.007(a)'s second benefit is restricted solely to a damages cap. It is for this
reason that I cannot join the majority's reasoning.

 In contrast to the majority, I read the second benefit of section 312.007(a) more
broadly, to extend to certain employees and personnel of private-supported-medical
schools the potential ability to invoke legal principles (e.g., rules of law, affirmative
defenses) that a governmental employee could invoke to preclude or to limit
individual liability that he might otherwise incur for carrying out certain types of his
employer's activities. The language of section 312.007(a)'s second benefit supports
this broader interpretation. Specifically, this provision speaks in terms of
"determining the liability, if any, of the person for the person's acts or omissions
. . . ." Id. (emphasis added). "Determining" an individual's liability for his acts or
omissions is a process, an adjudication. See Random House Webster's
Unabridged Dict. at 542 (2d ed. 2001) (defining "determine" as "to settle or decide
. . . by an authoritative or conclusive decision" and "to conclude or ascertain, as after
reasoning, observation, etc."); id. at 541 (defining "determination" as "the act of
coming to a decision or of affixing or settling a purpose" and "ascertainment, as after
observation or investigation"). That process is broad enough to encompass the
adjudication of, for example, an affirmative defense to the individual's liability. 
"Determining the liability" of the individual must thus be more than merely placing
a cap on damages that can be awarded against that individual, as the majority reads
the phrase.

 The narrowness and specificity of other provisions of chapter 312 also
demonstrate that the phrase "[an] . . . employee of a . . . supported medical . . . school
. . . is an employee of a state agency . . . for purposes of determining the liability, if
any, of the person for the person's acts or omissions" was intended to be more than
simply a damages cap. For example, section 312.006(a), in which the Legislature
grants the private-supported-medical school the damages cap available to a
governmental unit, employs words far more specific than those used to describe the
second benefit of section 312.007(a). (12) And when the Legislature intended to provide
employees of private-supported-medical schools with the indemnity (13) or with the bar
to suit (14) available to governmental employees, it did so with specific language and
with references to specific provisions of other statutes. In contrast, the phrase "[an]
. . . employee of a . . . supported medical . . . school . . . is an employee of a state
agency . . . for purposes of determining the liability, if any, of the person for the
person's acts or omissions" is worded generally, not with the kind of specificity found
in the other provisions of chapter 312 cited above. In sum, the Legislature knew how
to limit the "governmental" benefits that it was granting private-supported-medical
schools and their employees, but chose not to use such limiting language when it
provided that private-supported-medical-school employees were to be treated as
governmental employees "[f]or purposes of determining the liability, if any, of the
person for the person's acts or omissions" under specified circumstances.

 For all of these reasons, I conclude that when a private-supported-medical-school employee is sued in his individual capacity for his acts or omissions while
engaged in certain of the school's activities, he may invoke the affirmative defense
of official immunity from liability, if the facts of the case allow it. See Tex. Health
& Safety Code Ann. § 312.007(a). If the private-supported-medical-school
employee wishes to invoke this affirmative defense, he may use a summary-judgment
motion to do so. See Koseoglu, 233 S.W.3d at 843 ("[A]n official sued in his
individual capacity would assert official immunity as a defense to personal monetary
liability, which is well suited for resolution in a motion for summary judgment."). If
that summary-judgment motion is denied, he may appeal the ruling under section
51.014(a)(5). See id. at 841; Hernandez, 208 S.W.3d at 10. The reason that he may
appeal that ruling under section 51.014(a)(5) is one of simple logic: if he is to be
treated as if he were a governmental employee for purposes of a summary-judgment
ground based on official immunity from individual liability, he should also be treated
as if he were a governmental employee for the purpose of appealing that very ruling. 
That is, it would be incongruous not to allow him to appeal, on the basis that he was
not actually a governmental employee, the very summary-judgment ruling for which
the law required that he be treated below as if he were one.

 The majority implies that, had the Legislature intended for section 312.007(a)
to allow a private-supported-medical-school employee to invoke the affirmative
defense of official immunity from liability, it could have used the words "immunity
from liability" in that section. Yes, the Legislature could have used the words
"immunity from liability," rather than implicitly having included, by logical necessity,
the potential to invoke an affirmative defense based on that immunity. But the
absence of the word "immunity" does not render the Legislature's intent unclear. 
Indeed, the supreme court itself has interpreted a statute not expressly containing the
term "immunity from liability" to grant such immunity, so that a summary-judgment
ruling issued pursuant to it is subject to appeal under section 51.014(a)(5). See
Newman v. Obersteller, 960 S.W.2d 621, 622-23 (Tex. 1997). Of course, Newman
also demonstrates that section 51.014(a)(5)'s failure to reference section 312.007, and
section 312.007's failure to state that orders based on it are appealable, are not
necessarily dispositive matters. See id. at 622 (holding that denial of summary-judgment motion invoking statutory bar of former Texas Civil Practice and Remedies
Code section 101.106 was appealable under section 51.014(a)(5), despite fact that
section 51.014(a) did not list rulings based on former section 101.106 as appealable
and fact that former section 101.106 did not state that orders based on it were
appealable).

C. Why I Concur, Rather Than Dissent

 I concur in, rather than dissent from, the judgment dismissing Dr. Klein's
appeal because I do not interpret Dr. Klein's summary-judgment motions as having
asserted any legal principle or affirmative defense that might have been available to
a governmental employee under the facts of this case.

 Baylor's and Dr. Klein's summary-judgment motions asserted summarily that
Dr. Klein had "official immunity in this case," which Hernandez apparently
understood as an assertion of official immunity from liability because she responded
to that affirmative defense on the merits. However, Baylor and Dr. Klein's later
summary-judgment reply clarified that they were not asserting common-law official
immunity from liability. Their summary-judgment reply was consistent with the
overall gist of their summary-judgment motions, which was to argue that Texas
Health and Safety Code sections 312.006 and 312.007 cloaked them both with the
immunity from suit and liability allegedly granted by the Texas Tort Claims Act. (15) 
Moreover, Baylor and Dr. Klein never in any way attempted to prove the elements of
common-law official immunity from liability.

 Summary-judgment motions are to be strictly construed in substantive matters
against the movant. See Nexen, Inc. v. Gulf Interstate Eng'g Co., 224 S.W.3d 412,
423 n.14 (Tex. App.--Houston [1st Dist.] 2006, no pet.). Under this standard, I do
not interpret Baylor's and Dr. Klein's summary-judgment motions to have asserted
Dr. Klein's official immunity from liability, although I believe that section 312.007(a)
gave him the ability to invoke that affirmative defense. See Hernandez, 208 S.W.3d
at 11 (interpreting Baylor's and its physicians' summary-judgment motion not to raise
ground of official immunity from liability, so that the order denying the motion was
not appealable under Texas Civil Practice and Remedies Code section 51.014(a)(5),
when movants (1) "d[id] not claim official immunity" in their motion; (2) did not
allege or offer evidence on elements of official immunity; and (3) cited only section
312.006(a), which by its terms could not apply to individuals). Because Dr. Klein's
summary-judgment motions did not assert official immunity from liability, (16) the trial
court's order was not one denying "a motion for summary judgment that is based on
an assertion of immunity by an individual" who could be treated, under section
312.007(a), as "an officer or employee of the state or a political subdivision of the
state." Accordingly, I concur in the conclusion that we lack subject-matter
jurisdiction over Dr. Klein's appeal.

Conclusion


 With these comments, I concur in the judgment.


 Tim Taft

 Justice


Panel consists of Justices Taft, Jennings, and Alcala.


Justice Taft, concurring in the judgment.
1. The Texas Supreme Court issued its opinion in Texas A&M University System
v. Koseoglu during the pendency of the motions for rehearing and for en banc
reconsideration in this appeal.
2. See, e.g., Harris County Toll Rd. Auth. v. Southwestern Bell Tel. , L.P., No. 01-05-00668-CV, 2006 WL 2641204, at *2 (Tex. App.--Houston [1st Dist.] Sept.
14, 2006, pet. granted); see also Tex. R. App. P. 2, 25.1(b), 26.3.
3. See, e.g., Valley Baptist Med. Ctr. v. Gonzales, 33 S.W.3d 821, 822 (Tex.
2000).
4. See, e.g., In re H.M.M., 230 S.W.3d 204, 205 (Tex. App.--Houston [14th
Dist.] 2006, no pet.).
5. See, e.g., Stary v. Debord, 967 S.W.2d 352, 352-53 (Tex. 1998).
6. See Tex. Civ. Prac. & Rem. Code Ann. §§ 104.001-.009 (Vernon 2005);
Tex. Health & Safety Code Ann. § 312.007(a) (Vernon 2001); see also
Baylor Coll. of Med. v. Hernandez, 208 S.W.3d 4, 10-11 (Tex. App.--Houston
[14th Dist.] 2006, pet. denied) (reasoning, under section 51.014(a)(5), that
although immunity from individual liability necessarily applies only to
individuals, "an agency or institution may be shielded from respondeat superior
liability for its employee's negligence if the employee possesses" such
immunity from liability, so that "a motion for summary judgment by the
employer of the putative official may be 'based on an assertion' of" individual
immunity from liability "for the purposes of determining whether an
interlocutory appeal is available, even though the employer may not qualify
for" individual immunity from liability); see also Baylor Coll. of Med. v. Tate,
77 S.W.3d 467, 470-71 (Tex. App.--Houston [1st Dist.] 2002, no pet.)
(indicating in dictum that Baylor could have invoked appellate jurisdiction
under section 51.014(a)(5) had its doctors moved for summary judgment on
basis of official immunity and had plaintiffs alleged vicarious liability against
Baylor).
7. I recognize that we need not follow judicial dictum if it is erroneous. See
Edwards v. Kaye, 9 S.W.3d 310, 314 (Tex. App.--Houston [14th Dist.] 1999,
pet. denied) (quoting Palestine Contractors, Inc. v. Perkins, 386 S.W.2d 764,
773 (Tex. 1964)). Respectfully, for the reasons set out above, I believe that the
Second Dictum incorrectly interprets section 51.014(a)(5). I nonetheless
believe that we must follow the Second Dictum because (1) the Koseoglu court
used similar reasoning to support its actual holding, indicating that it would
interpret all subsections of section 51.014(a) likewise, and (2) the issue is not
so clear-cut as to justify doing otherwise (witness that we, too, incorrectly
employed reasoning like that of the Second Dictum to hold on original
submission that we lacked jurisdiction under section 51.014(a)(8) over Dr.
Klein's appeal, see Klein v. Hernandez, No. 01-06-00569-CV, 2007 WL
2264539, at *11 (Tex. App.--Houston [1st Dist.] Aug. 3, 2007), withdrawn,
No. 01-06-00569-CV (Tex. App.--Houston [1st Dist.] Apr. 17, 2008, no pet.
h.)).
8. See Tex. Health & Safety Code Ann. § 312.007(a) ("A . . . supported
medical . . . school . . . is a state agency, and [an] . . . employee of a . . .
supported medical . . . school . . . is an employee of a state agency for purposes
of Chapter 104, Civil Practice and Remedies Code . . . .") (emphasis added). 
Texas Civil Practice and Remedies Code chapter 104--entitled, "State
Liability for Conduct of Public Servants"--provides the circumstances under
which the State must indemnify its employees, former employees, and certain
individuals under contract with or in the service of particular state entities for
damages, court costs, and attorney's fees. See Tex. Civ. Prac. & Rem. Code
Ann. §§ 104.001-.009.
9. See Tex. Health & Safety Code Ann. § 312.007(a) (A . . . supported
medical . . . school . . . is a state agency, and [an] . . . employee of a . . .
supported medical . . . school . . . is an employee of a state agency . . . for
purposes of determining the liability, if any, of the person for the person's acts
or omissions while engaged in the coordinated or cooperative activities of the
. . . school . . . .").
10. See id. § 312.007(b) (Vernon 2001) ("A judgment in an action or settlement of
a claim against a . . . supported medical . . . school . . . under Chapter 101, Civil
Practice and Remedies Code, bars any action involving the same subject
matter by the claimant against [an] . . . employee of the . . . school . . . whose
act or omission gave rise to the claim as if the person were an employee of a
governmental unit against which the claim was asserted as provided under
Section 101.106, Civil Practice and Remedies Code."). The version of section
101.106 that applies to this case reads likewise. See Act of May 17, 1985, 69th
Leg., R.S., ch. 959, § 1, 1985 Tex. Gen. Laws 3242, 3305, amended by Act of
June 2, 2003, 78th Leg., R.S., ch. 204, § 11.05, 2003 Tex. Gen. Laws 847, 886.
11. The majority does not state exactly what is meant by "limited liability," but I
am assuming that at least a damages cap is meant. Cf. Tex. Health & Safety
Code Ann. § 312.006(a) (Vernon 2001) (entitled "Limitation on Liability" and
importing Texas Tort Claims Act's damages cap for supported medical
schools). 
12. § 312.006. Limitation on Liability


 (a) A . . . supported medical . . . school . . . engaged in
coordinated or cooperative medical . . . clinical education under
Section 312.004, including patient care and the provision or
performance of health or dental services or research at a public
hospital, is not liable for its acts and omissions in connection with
those activities except to the extent and up to the maximum
amount of liability of state government under Section 101.023(a),
Civil Practice and Remedies Code, for the acts and omissions of
a governmental unit of state government under Chapter 101, Civil
Practice and Remedies Code. . . .


 Tex. Health & Safety Code Ann. § 312.006(a) (emphasis added); see Tex.
Civ. Prac. & Rem. Code Ann. § 101.023(a) (Vernon 2005) ("Liability of the
state government under this chapter is limited to money damages [in certain
amounts]."); Baylor Coll. of Med. v. Hernandez, 208 S.W.3d 4, 11 (Tex.
App.--Houston [14th Dist.] 2006, pet. denied) (interpreting section 312.006(a)
as importing damages cap).
13. See Tex. Health & Safety Code Ann. § 312.007(a) ("A . . . supported
medical . . . school . . . is a state agency, and [an] . . . employee of a . . .
supported medical . . . school . . . is an employee of a state agency for purposes
of Chapter 104, Civil Practice and Remedies Code . . . .").
14. See Tex. Health & Safety Code Ann. § 312.007(b) ("A judgment in an
action or settlement of a claim against a . . . supported medical . . . school . . .
under Chapter 101, Civil Practice and Remedies Code, bars any action
involving the same subject matter by the claimant against [an] . . . employee of
the . . . school . . . whose act or omission gave rise to the claim as if the person
were an employee of a governmental unit against which the claim was asserted
as provided under Section 101.106, Civil Practice and Remedies Code.").
15. See Tex. Civ. Prac. & Rem. Code Ann. §§ 101.001-.029 (Vernon 2005 &
Supp. 2007).
16. Baylor's and Dr. Klein's summary-judgment motions relied on Texas Civil
Practice and Remedies Code sections 101.021 and 101.101 of the Texas Tort
Claims Act, which apply only to a governmental unit, not to an individual sued
in his individual capacity, as was Dr. Klein. See Tex. Civ. Prac. & Rem.
Code Ann. §§ 101.021, 101.101 (Vernon 2005).