Opinion issued April 21, 2008









Opinion issued April 21, 2008

 

 

 




 
 
  
 
 




 

 

 

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 



 

NO. 01-06-00569-CV

 



 

GEOFFREY KLEIN AND BAYLOR COLLEGE OF MEDICINE, Appellants

 

V.

 

CYNTHIA HERNANDEZ, AS NEXT FRIEND
OF NAHOMY HERNANDEZ, A MINOR, Appellee

 



 

On Appeal from the 152nd District
Court

Harris County, Texas

Trial Court Cause No. 2003-49449

 



 

                          OPINION 
CONCURRING ON  REHEARING

I withdraw my
concurring opinion on rehearing dated April 17, 2008 and substitute this
concurring opinion on rehearing in its stead.








I respectfully
concur in the panel=s judgment on rehearing.  

                                                 Baylor=s Appeal

In a portion of
its opinion on rehearing, the majority holds that we have no jurisdiction under
Texas Civil Practice and Remedies Code section 51.014(a)(5) over the appeal of
appellant Baylor College of Medicine (ABaylor@)Cthat is, that we
have no jurisdiction to the extent that Baylor appeals the denial of its
summary-judgment ground that sought judgment based on appellant Dr. Geoffrey
Klein=s immunity from individual
liability.  See Tex. Civ. Prac.
& Rem. Code Ann. ' 51.014(a)(5)
(Vernon Supp. 2007).  The majority correctly bases this holding on the Texas
Supreme Court=s recent opinion in Texas A&M University System
v. Koseoglu, in which the supreme court indicated that an entity like
Baylor would not be considered a Aperson@ within the
meaning of section 51.014(a)(5).[1] 
See 233 S.W.3d 835, 843 (Tex. 2007). 

What the panel
does not acknowledge, however, is that the language from Koseoglu on
which it relies is dictum, not a holding.  I write separately to explain why,
despite the fact that the relied-upon language from Koseoglu is dictum,
I agree that we must follow it here.  I also write respectfully to request that
the Texas Supreme Court revisit this and other dictum from Koseoglu.








A.      What We Held Before








Section
51.014(a)(5) provides that A[a] person may appeal from an
interlocutory order@ that Adenies a motion
for summary judgment that is based on an assertion of immunity by an
individual who is an officer or employee of the state or a political
subdivision of the state . . . .@  Tex. Civ. Prac. & Rem. Code Ann. ' 51.014(a)(5)
(Vernon Supp. 2007) (emphasis added).  On original submission, we held that we
had jurisdiction under section 51.014(a)(5) over Baylor=s appeal from the
denial of its summary-judgment motions based on Dr. Klein=s immunity from
individual liability.  See Klein v. Hernandez, No. 01-06-00569-CV, 2007
WL 2264539, at *9 (Tex. App.CHouston [1st Dist.] Aug. 3, 2007), withdrawn, No. 01-06-00569-CV (Tex. App.CHouston [1st Dist.] Apr. 17, 2008, no
pet. h.). 
We reasoned that, although the term Aperson@ in the
preliminary text of section 51.014(a) is not defined, reading Aperson@ to be broader
than just the Aindividual@ on whose immunity
from liability the summary-judgment motion was based comported with the
statutory definition of Aperson@ that applies to
the Texas Civil Practice and Remedies Code generally.  Id. at *8.  Under
that definition, Aperson@ includes A>corporation,
organization, government or governmental subdivision or agency, business trust,
estate, trust, partnership, association, and any other legal entity.=@  Id. (quoting Tex. Gov=t Code Ann. ' 311.005(2)
(Vernon 2005)).  That definition, we determined on original submission, was broad
enough to include Baylor.  Id. at *9.

B.      What Our Implicit Reasoning Was

At the heart of
our reasoning concerning section 51.014(a)(5) was the fundamental understanding
that the term Aperson@ in the preliminary text of section
51.014(a) is independent of, and not limited by, any language within any of the
subsections following it.  This understanding is consistent with the
grammatical structure of section 51.014(a).  The preliminary text contains the
subject, verb, preposition, and prepositional object that apply to all
subsections: AA person [the common subject] may appeal [the common
verb] from an interlocutory order [the common preposition and its object]
. . . that . . . .@  The common
subject Aperson@ is modified by
nothing.  The subsections, in contrast, are alternative restrictive clauses
that modify the common prepositional object of the sentence: they are 11
alternative phrases that each modify the common prepositional object Aorder.@  Thus, any
descriptive language within each of the subsections of section 51.014(a)
cannot, as a matter of grammar, modify the common subject of the sentenceCAperson,@ in the
preliminary language of section 51.014(a).  Rather, that descriptive language
within the subsections modifies either the sentence=s common prepositional
object (Aorder@) or modifies
phrases that modify that common prepositional object.  

 








For example,
regarding subsection (5), the entire statutory sentence can be broken down as
follows:

Subject:                         A
person

 

Verb:                              may
appeal

 

Preposition:                             from

 

Prepositional object:      [an
interlocutory] order . . .

 

Compound restrictive

clause modifying the

prepositional object:      that
denies a motion for summary judgment that is based on an assertion of immunity
by an individual who is an officer or employee of the state or a political
subdivision of the state.

 

Within the
restrictive clause that modifies Aorder,@ there are
multiple restrictive clauses or prepositional phrases, each of which modifies a
phrase that, eventually, serves to modify the sentence=s prepositional
object.  Grammatically speaking, the restrictive clause Awho is an officer
or employee of the state or a political subdivision of the state@ simply cannot be
read to modify the common subject Aperson@; rather, it can
modify only the word Aindividual.@  This
understanding was reflected, albeit not expressly analyzed, in the conclusion
reached in our previous opinion.

C.      What Koseoglu Did








I set out the
bases for our prior opinion=s express holding and its implicit
reasoning concerning section 51.015(a)(5) because, in the later‑issued Koseoglu,
there is dictum appearing both to support and to undermine that holding and
reasoning.  For example, in one portion of dictum, the Koseoglu court
reasons:

The text of Section 51.014(a) makes
it clear that the Awho@ [who may appeal] applicable to each subsection is
the term Aperson@ that appears at the beginning of
the statute.  There is no indication that the phrase[] Aan individual who is an officer or
employee of the state@ . . . in Section[]
51.014(a)(5) . . . [is] intended to modify the term Aperson.@  Instead, those phrases and others
in the various subsections of the statute describe exactly Awhat@ may be appealed from an interlocutory order.

 

Koseoglu, 233 S.W.3d at
842.  (I refer herein to the above-quoted dictum as Athe First Dictum.@)  The First
Dictum recognizes that the term Aperson@ in the
preliminary text of section 51.014(a) (i.e., the statutory sentence=s common subject),
which defines the entity or person whom the statute allows to appeal, is not
modified or limited by the descriptive text that appears within the subsections
following it.  That is, for purposes of section 51.014(a)(5), the meaning of Aperson@ is not limited in
any way by the phrase Aan individual who is an officer or
employee of the state or a political subdivision of the State.@  Our previous
interpretation of section 51.014(a)(5) is in accord with the First Dictum of Koseoglu.

But further dictum
in Koseoglu appears to undermine our previous interpretation of section
51.014(a)(5).  In particular, the Koseoglu court reasoned:

 








For example, . . . there is no other way to
read Section 51.014(a)(5) than to conclude that only an Aindividual who is an officer or employee of the state
or a political subdivision of the state@
may appeal an interlocutory order denying a motion for summary judgment.  The
only other entity that would generally have standing to file such an appeal
would be a governmental body, but the words of Section 51.014(a)(5) offer no
indication or suggestion that it applies to any entity other than a state
official, the only entity which it describes.  This stands to reason because an
official sued in his individual capacity would assert official immunity as a
defense to personal monetary liability, which is well suited for resolution in
a motion for summary judgment.

 

Id. at 843.  (I refer
herein to the above-quoted dictum as Athe Second Dictum.@)  The Second
Dictum indicates that the term Aperson@ in the
preliminary text of section 51.014(a) is not to be read independently, but
should instead be read as being limited by the phrase Aan individual who is an officer or
employee of the state or a political subdivision of the state@ that appears in subsection (5). 
That is, in the Second Dictum, the Koseoglu court views a modifier (Aan individual who is an officer or
employee of the state or a political subdivision of the state@) of the statutory sentence=s prepositional object (Aorder@) as also modifying the sentence=s subject (Aperson@).  See id.








These dicta contradict one another. 
Specifically, in the Second Dictum, the court indicates that the restrictive
language used in subsection (5) to describe the motion on which the ruling is
made also describes the person who may appeal that ruling.  This is the
opposite of the relationship that the First Dictum, which was based on the
statutory sentence=s grammatical structure, views the two phrases to have. I do
not believe that these two dicta can be reconciled.








One of the reasons for the Second
Dictum=s departure from the statutory
sentence=s grammatical structure, and for the
resulting contradiction in Koseoglu=s dicta, appears to be the court=s conflation within the Second Dictum
of two distinct concepts affecting appellate jurisdiction: (1) one=s standing to appeal a ruling because
one has a justiciable interest in that ruling, in the abstract, and (2) one=s designation under the
interlocutory-appeal statute to take the appeal, whether one has a justiciable
interest in the ruling or not.  The two concepts represent only two of at least
four ways in which an appellate court may lack jurisdiction over an appeal. 
For example, in the case of an interlocutory appeal such as this, an appellate
court will lack subject-matter jurisdiction if (1) the appeal is untimely
filed;[2] (2) the appeal
is rendered moot after its proper perfection;[3]
(3) the appellant lacks standing to complain of the interlocutory ruling that
is appealed;[4] or (4) no
statute or rule allows an interlocutory appeal by that person or from that
ruling.[5]  Each of
these grounds is, as a general rule, independent; the existence of any one
deprives the appellate court of jurisdiction over the interlocutory appeal.








In the First Dictum, the Koseoglu court does not mention standing (or
justiciable interest) to appeal the ruling mentioned in subsection (5), but
instead gleans the statute=s meaning solely from its grammatical structure, reasoning
that the term Aperson,@ which designates whom the statute allows to appeal, is not restricted by
any language in subsection (5)Cor in any other subsections, for that matter.  Koseoglu,
233 S.W.3d at 842.  In contrast, in the Second Dictum, the Koseoglu court injects into its reasoning the
concept of who has standing (or a justiciable interest) to appeal and then
blends that jurisdictional concept with the independent jurisdictional concept
of whom the statute allows to appeal.  See id. at 843 (employing term Astanding@ and speaking in those terms, as well
as considering that subsection (5) allows appeals only from denials of the
referenced summary-judgment motion).  The Second Dictum thus reflects a view
that the Legislature intended two things for each subsection of section
51.014(a): (1) that the sentence=s common subject (Aperson@) be limited only to those who have a
justiciable interest to appeal the ruling described in the particular
subsection and (2) that those who have a justiciable interest to appeal the
ruling described in the particular subsection be limited to those who are named
or necessarily implied within that subsection.  See id.  

D.      Why
I Believe that the Dicta in Koseoglu Should Be Revisited

There are three reasons why I believe
that the First Dictum of Koseoglu correctly interprets section
51.014(a)(5) and that the Second Dictum does not.  First, as explained above,
the First Dictum comports with section 51.014(a)=s grammatical structure. 

Second, under the Second Dictum of Koseoglu,
the common subject Aperson@ could mean different things depending on the subsection with
which it is being read.  In my view, it is doubtful that the Legislature
intended for the common subject of section 51.014(a) to mean different things
when applied to different subsections of the same section. 








Third, implicit in the Second Dictum=s merging the concepts of standing
to appeal and the statutory right to appeal is the view that the
Legislature, in section 51.014(a), intended to declare who has a justiciable
interest to challenge certain orders on appealCin every case and under any possible
set of facts.  The purpose of section 51.014(a) is not to do this; rather, its
purpose is to provide what orders may be appealed interlocutorily.   Cf.
Bally Total Fitness Corp. v. Jackson, 53 S.W.3d 352, 365 (Tex. 2001) (AThe purpose of section 51.014(a)(3)
of the Texas Civil Practice and Remedies Code, which allows interlocutory
appeals of certain class‑certification rulings, is to ensure that the
costly process of a class action, with its attendant potential for irremediable
harm to a defendant, does not proceed when there is no basis for certifying a
class.@).  I glean this purpose from the
fact that the Legislature (1) employed the very broad term Aperson@ to describe who can appeal the
orders listed in section 51.014(a)=s subsections; (2) structured the
overall section so that, grammatically, the term Aperson@ is not limited by anything; and (3)
focused each subsection on a particular type of order that can be appealed
interlocutorily.  Reading section 51.014(a)=s plain language, I simply see no
intent by the Legislature to decree which entities have a justiciable interest
in appealing the listed orders.













And although the concepts of standing
to appeal and the statutory right to appeal often overlap, this is not
always the case, as they truly are independent concepts.  Here, for example,
Baylor (which was a party below before non‑suit) asserts that it has a
justiciable interest in pursuing an appeal of the denial of its
summary-judgment motions based on the immunity from individual liability of Dr.
Klein, its employee, because Baylor (1) could be liable under a respondeat
superior theory if the non-suit is invalid and (2) may eventually have to
indemnify Dr. Klein under statute even if the non-suit is valid.[6] 
The majority correctly does not reach the merits of these standing arguments in
its opinion, and I likewise do not reach them here.  But I note that if Baylor
is correct that it has standing, in the abstract, to contest a judgment
rendered against its employee in his individual capacity, then a problem arises
in interpreting section 51.014(a)(5)Cas the Second Dictum of Koseoglu
doesCso that the only entity with standing
to appeal is the one named in that subsection, i.e., the individual
employee.  A more reasonable interpretation is that the Legislature employed
the very broad term Aperson@ as section 51.014(a)=s common subject exactly because the
Legislature did not wish to determine who has standing to appeal the
designated rulingsCso that the statute=s focus would not be on who had a
justiciable interest in appealing a ruling, but would instead be on what
rulings could be appealed.

E.      Why
I Nonetheless Agree with the Majority=s Disposition

ADictum is not binding as precedent
under stare decisis.@  Edwards v. Kaye, 9 S.W.3d 310, 314 (Tex. App.CHouston [14th Dist.] 1999, pet.
denied).  Nonetheless, Athere is an exception to the precedential value of dictum
depending on how it is classified, obiter dictum or judicial dictum.@  Id.  AJudicial dictum, a statement by the
supreme court made very deliberately after mature consideration and for future
guidance in the conduct of litigation, is >at least persuasive and should be
followed unless found to be erroneous.=@  Id. (quoting  Palestine
Contractors, Inc. v. Perkins, 386 S.W.2d 764, 773 (Tex. 1964)).  Were the
Second Dictum of Koseoglu merely obiter dictum, I would dissent from the
majority=s holding based on it, arguing that
our holding on rehearing should comport with Koseoglu=s First Dictum, as did the relevant
holding in our original opinion.  

However, I conclude that the Second
Dictum from Koseoglu is judicial dictum that best predicts the supreme
court=s interpretation of section
51.014(a), generally, and of subsection 51.014(a)(5), specifically. I reach
this conclusion because the Koseoglu court used similar reasoning to
support its actual holding concerning section 51.014(a)(8):








Section 51.014(a)(8) differs from Section[]
51.014(a)(5) . . . because, by its plain language allowing for
interlocutory appeals of orders granting or denying pleas to the jurisdiction,
it cannot be read as applying solely to a governmental unit, the entity which
it describes.  Interpreting Agovernmental
unit@ to modify the term Apersons,@ as Koseoglu would have us do, would preclude an
aggrieved plaintiff, who is plainly not a governmental unit, from bringing an
interlocutory appeal to challenge the grant of a jurisdictional plea.  This
would be inconsistent with the express language of Section 51.014(a)(8).  It
would be irrational for the Legislature to have intended that a governmental
unit be the only Aperson@ who may appeal
from an interlocutory order because a governmental unit would have no reason to
appeal the grant of a plea to the jurisdiction.  For the entire phrase Agrants or denies@ to
be given effect, the statute must allow an appeal to be filed by both a non‑governmental
plaintiff challenging the grant of a plea to the jurisdiction and a
governmental defendant challenging the denial of one.

 








Koseoglu, 233 S.W.3d at 843.  This
reasoning views descriptive words within a subsection to modify not only the
sentence=s prepositional object (Aorder@), but also, in effect, to modify the
sentence=s subject (Aperson@).  Put another way, the reasoning
restricts the meaning of Aperson@ (the Awho@ who may appeal) based on terms that modify Aorder@ (the Awhat@ that may be appealed).  And without
expressly saying so, the subsection-(8) reasoning, by focusing on the phrase Agrants or denies,@ also blends together the distinct
concepts of who has a justiciable interest in appealing the referenced ruling
and whom the statute authorizes to appeal.  Accordingly, this reasoning falls
in line with the Second Dictum in Koseoglu concerning section
51.014(a)(5).  For this reason, I view the Second Dictum as judicial dictum,
not mere obiter dictum.  I thus further agree that we must follow it.[7] 
See Edwards, 9 S.W.3d at 314.

For the reasons set out above,
however, I respectfully request that the Texas Supreme Court revisit its dicta
concerning section 51.014(a)(5), and the equivalent reasoning supporting its
holding under section 51.014(a)(8), from Koseoglu.

                                                Dr.
Klein=s Appeal

I also respectfully concur in that
portion of the judgment that dismisses Dr. Klein=s appeal.  I do so because I do not
read Texas Health and Safety Code section 312.007(a) or Texas Civil Practice
and Remedies Code section 51.014(a)(5) as narrowly as the majority does.  See
Tex. Civ. Prac. & Rem. Code Ann.
' 51.014(a)(5); Tex. Health & Safety Code Ann. ' 312.007(a) (Vernon 2001).








A.      What
Section 51.014(a)(5)=s Requirements Are

Texas Civil Practice and Remedies
Code section 51.014(a)(5) has two requirements for appellate jurisdiction to
attach: (1) that the denied summary-judgment motion be Abased on an assertion of immunity@ by an individual and (2) that that
individual be Aan officer or employee of the state or a political subdivision of the
state.@  See Tex. Civ. Prac. & Rem. Code Ann. ' 51.014(a)(5).  If either
of these requirements is missing, we lack jurisdiction over the interlocutory
appeal.

B.      In What Circumstances a
Private-Supported-Medical-School Employee Can Meet Section 51.014(a)(5)=s Requirements for Interlocutory Appeal

 








A private-supported-medical school is
obviously not the Astate or a political subdivision of the state.@  Accordingly, the employee of such a
private school cannot actually be an employee of the state or its
political subdivision.  Normally, one who is not actually a state employee
cannot assert an immunity defense to his personal liability.  See, e.g.,
Univ. of Houston v. Clark, 38 S.W.3d 578, 580 (Tex. 2000) (AOfficial immunity is an affirmative
defense that protects government employees from personal liability.@) (emphasis added).  But to my mind,
if a separate statutory provision requires that a
private-supported-medical-school employee be treated as if he were a
governmental employee in certain circumstances, and if those circumstances
exist in a given case, then the employee may be treated as if he were a
governmental employee in that case.  I view Texas Health and Safety Code
section 312.007(a) as a statute falling into this category.  Specifically, I
read section 312.007(a) to allow such a private employee to invoke legal
principles or defenses that are available only to governmental employees (such
as the affirmative defense of official immunity from liability) for the purpose
of determining his liability in a given case.  It flows naturally from this
reading that if the Agovernmental@ legal principle or affirmative defense that the private
employee invokes is based on immunity from individual liability (such as the
affirmative defense of official immunity from liability), he should be able to
appeal the denial of a summary-judgment motion based on that legal principle or
affirmative defense under section 51.014(a)(5).  See, e.g., Koseoglu,
233 S.W.3d at 841 (AHad [the governmental official] filed a motion for summary
judgment based on an assertion of official immunity, he clearly would be
permitted under Section 51.014(a)(5) to appeal an interlocutory denial of his
motion for summary judgment.@); see also Baylor Coll. of Med. v. Hernandez, 208
S.W.3d 4, 10 (Tex. App.CHouston [14th Dist.] 2006, pet. denied).








Section 312.007(a) is part of Texas
Health and Safety Code chapter 312, which expressly requires that
private-supported-medical schools be considered governmental units for limited
purposes.  One of those limited purposes, found in section 312.007, involves
claims against the employees (or directors, trustees, officers, interns,
residents, fellows, faculty members, or other associated health care
professionals) of supported-medical schools in their individual capacity:

' 312.007.   Individual Liability

 (a)     A . . . supported medical
. . . school . . . is a state agency, and [an]
. . . employee of a . . . supported medical . . .
school . . . is an employee of a state agency for purposes of
Chapter 104, Civil Practice and Remedies Code, and for purposes of
determining the liability, if any, of the person for the person=s acts or omissions while engaged in the coordinated
or cooperative activities of the . . . school . . . .

 

(b)     A
judgment in an action or settlement of a claim against a . . .
supported medical . . . school . . . under Chapter 101, Civil
Practice and Remedies Code, bars any action involving the same subject
matter by the claimant against [an] . . . employee of the . . .
school . . . whose act or omission gave rise to the claim as if
the person were an employee of a governmental unit against which the claim was
asserted as provided under Section 101.106, Civil Practice and Remedies Code.

Tex. Health
& Safety Code Ann. ' 312.007 (Vernon 2001) (emphasis
added).

There are thus three situations in
which section 312.007 treats a private-supported-medical school=s employee (or its director, trustee,
officer, intern, resident, fellow, faculty member, or other associated health
care professional) as if he were an employee of a governmental unit: 

 

 








1.       when certain situations that could allow for
indemnification of the employee exist;[8]

 

2.       when determining whether the employee could
be individually liable for his acts or omissions occurring during certain types
of the school=s activities;[9] and 

 

3.       when a judgment is rendered or a settlement
is made against the employer-school, in which case any action against the
employee involving the same subject matter is barred.[10]








The second benefit of section 312.007Ccreated by the phrase A[an] . . . employee of a
. . . supported medical . . . school . . . is an
employee of a state agency . . . for purposes of determining the
liability, if any, of the person for the person=s acts or omissions@ in section 312.007(a)Cis the relevant one for purposes of
this appeal.  The majority reads this second benefit of section 312.007(a) as 
a Agrant of limited liability,@[11] without further explanation.  That
is, the majority reads this provision of  section 312.007(a) to treat
private-supported-medical-school employees as if they were governmental
employees solely for the purpose of granting them a damages cap that might be
available to governmental employees.  For this reason, the majority concludes
that whatever section 312.007(a)=s second benefit confers, that
benefit cannot be Abased on an assertion of immunity by an individual who is an
officer or employee of the state or a political subdivision of the state,@ as required for us to have
jurisdiction under section 51.014(a)(5).

 








I do not disagree that the second
benefit of section 312.007(a) could theoretically encompass a limitation on
liability (such as a damages cap), if it applies in a given case and if that
benefit would be available to a governmental employee in the particular
circumstances.  What I disagree with is the majority=s position that section 312.007(a)=s second benefit is restricted
solely to a damages cap.  It is for this reason that I cannot join the
majority=s reasoning.








In contrast to the majority, I read
the second benefit of section 312.007(a) more broadly, to extend to certain
employees and personnel of private-supported-medical schools the potential
ability to invoke legal principles (e.g., rules of law, affirmative
defenses) that a governmental employee could invoke to preclude or to limit
individual liability that he might otherwise incur for carrying out certain
types of his employer=s activities.  The language of section 312.007(a)=s second benefit supports this
broader interpretation.  Specifically, this provision speaks in terms of Adetermining the liability, if any, of the person for the
person=s acts or omissions
. . . .@  Id. (emphasis added).  ADetermining@ an individual=s liability for his acts or omissions
is a process, an adjudication.  See Random
House Webster=s Unabridged
Dict. at 542 (2d ed.
2001) (defining Adetermine@ as Ato settle or decide . . . by an authoritative or
conclusive decision@ and Ato conclude or ascertain, as after reasoning, observation,
etc.@); id. at 541 (defining Adetermination@ as Athe act of coming to a decision or of
affixing or settling a purpose@ and Aascertainment, as after observation or investigation@).  That process is broad enough to
encompass the adjudication of, for example, an affirmative defense to the
individual=s liability.  ADetermining the liability@ of the individual must thus be more
than merely placing a cap on damages that can be awarded against that
individual, as the majority reads the phrase.













The narrowness and specificity of
other provisions of chapter 312 also demonstrate that the phrase A[an] . . . employee of a
. . . supported medical . . . school . . . is an
employee of a state agency . . . for purposes of determining the
liability, if any, of the person for the person=s acts or omissions@ was intended to be more than simply
a damages cap.    For example, section 312.006(a), in which the Legislature
grants the private-supported-medical school the damages cap available to a
governmental unit, employs words far more specific than those used to describe
the second benefit of section 312.007(a).[12] 
And when the Legislature intended to provide employees of
private-supported-medical schools with the indemnity[13]
or with the bar to suit[14] available to
governmental employees, it did so with specific language and with references to
specific provisions of other statutes.  In contrast, the phrase A[an] . . . employee of a
. . . supported medical . . . school . . . is an
employee of a state agency . . . for purposes of determining the
liability, if any, of the person for the person=s acts or omissions@ is worded generally, not with the
kind of specificity found in the other provisions of chapter 312 cited above. 
In sum, the Legislature knew how to limit the Agovernmental@ benefits that it was granting private-supported-medical
schools and their employees, but chose not to use such limiting language when
it provided that private-supported-medical-school employees were to be treated
as governmental employees A[f]or purposes of determining the liability, if any, of the
person for the person=s acts or omissions@ under specified circumstances.








For all of these reasons, I conclude
that when a private-supported-medical-school employee is sued in his individual
capacity for his acts or omissions while engaged in certain of the school=s activities, he may invoke the
affirmative defense of official immunity from liability, if the facts of the
case allow it.  See Tex. Health
& Safety Code Ann. ' 312.007(a).  If the private-supported-medical-school
employee wishes to invoke this affirmative defense, he may use a
summary-judgment motion to do so.  See Koseoglu, 233 S.W.3d at 843 (A[A]n official sued in his individual
capacity would assert official immunity as a defense to personal monetary
liability, which is well suited for resolution in a motion for summary
judgment.@).  If that summary-judgment motion is denied, he may appeal the ruling
under section 51.014(a)(5).  See id. at 841; Hernandez, 208
S.W.3d at 10.  The reason that he may appeal that ruling under section 51.014(a)(5)
is one of simple logic: if he is to be treated as if he were a governmental
employee for purposes of a summary-judgment ground based on official immunity
from individual liability, he should also be treated as if he were a
governmental employee for the purpose of appealing that very ruling.  That is,
it would be incongruous not to allow him to appeal, on the basis that he was
not actually a governmental employee, the very summary-judgment ruling
for which the law required that he be treated below as if he were one.








The majority implies that, had the
Legislature intended for section 312.007(a) to allow a
private-supported-medical-school employee to invoke the affirmative defense of
official immunity from liability, it could have used the words Aimmunity from liability@ in that section.  Yes, the
Legislature could have used the words Aimmunity from liability,@ rather than implicitly having
included, by logical necessity, the potential to invoke an affirmative defense
based on that immunity.  But the absence of the word Aimmunity@ does not render the Legislature=s intent unclear.  Indeed, the
supreme court itself has interpreted a statute not expressly containing the
term Aimmunity from liability@ to grant such immunity, so that a
summary-judgment ruling issued pursuant to it is subject to appeal under
section 51.014(a)(5).  See Newman v. Obersteller, 960 S.W.2d 621, 622B23 (Tex. 1997).  Of course, Newman
also demonstrates that section 51.014(a)(5)=s failure to
reference section 312.007, and section 312.007=s failure to state
that orders based on it are appealable, are not necessarily dispositive matters.  See id. at 622 (holding
that denial of summary-judgment motion invoking statutory bar of former Texas
Civil Practice and Remedies Code section 101.106 was appealable under section
51.014(a)(5), despite fact that section 51.014(a) did not list rulings based on
former section 101.106 as appealable and fact that former section 101.106 did
not state that orders based on it were appealable).

C.      Why I Concur, Rather Than
Dissent

I concur in, rather than dissent
from, the judgment dismissing Dr. Klein=s appeal because I do not interpret
Dr. Klein=s summary-judgment motions as having asserted any legal principle or
affirmative defense that might have been available to a governmental employee
under the facts of this case.








Baylor=s and Dr. Klein=s summary-judgment motions asserted
summarily that Dr. Klein had Aofficial immunity in this case,@ which Hernandez apparently
understood as an assertion of official immunity from liability because she
responded to that affirmative defense on the merits.  However, Baylor and Dr.
Klein=s later summary-judgment reply
clarified that they were not asserting common-law official immunity from
liability.  Their summary-judgment reply was consistent with the overall gist
of their summary-judgment motions, which was to argue that Texas Health and
Safety Code sections 312.006 and 312.007 cloaked them both with the immunity
from suit and liability allegedly granted by the Texas Tort Claims Act.[15]  Moreover, Baylor and Dr. Klein
never in any way attempted to prove the elements of common-law official
immunity from liability.








Summary-judgment motions are to be
strictly construed in substantive matters against the movant.  See Nexen,
Inc. v. Gulf Interstate Eng=g Co., 224 S.W.3d 412, 423 n.14 (Tex. App.CHouston [1st Dist.] 2006, no pet.). 
Under this standard, I do not interpret Baylor=s and Dr. Klein=s summary-judgment motions to have
asserted Dr. Klein=s official immunity from liability, although I believe that
section 312.007(a) gave him the ability to invoke that affirmative defense.  See
Hernandez, 208 S.W.3d at 11 (interpreting Baylor=s and its physicians= summary-judgment motion not to raise
ground of official immunity from liability, so that the order denying the
motion was not appealable under Texas Civil Practice and Remedies Code section
51.014(a)(5), when movants (1) Ad[id] not claim official immunity@ in their motion; (2) did not allege
or offer evidence on elements of official immunity; and (3) cited only section
312.006(a), which by its terms could not apply to individuals).  Because Dr.
Klein=s summary-judgment motions did not
assert official immunity from liability,[16]
the trial court=s order was not one denying Aa motion for summary judgment that is
based on an assertion of immunity by an individual@ who could be treated, under section
312.007(a), as Aan officer or employee of the state or a political
subdivision of the state.@  Accordingly, I concur in the conclusion that we lack
subject-matter jurisdiction over Dr. Klein=s appeal.

                                                      Conclusion

With these comments, I concur in the
judgment.

 

Tim Taft

Justice

 

Panel
consists of Justices Taft, Jennings, and Alcala.

 

Justice
Taft, concurring in the judgment.









[1]         The Texas Supreme Court issued its opinion in Texas
A&M University System v. Koseoglu
during the pendency of
the motions for rehearing and for en banc reconsideration in this appeal.





[2]         See, e.g., Harris County Toll Rd.
Auth. v. Southwestern Bell Tel. , L.P., No. 01-05-00668-CV, 2006 WL
2641204, at *2 (Tex. App.CHouston [1st Dist.] Sept. 14, 2006, pet. granted); see
also Tex. R. App. P. 2,
25.1(b), 26.3.





[3]         See, e.g., Valley Baptist Med. Ctr.
v. Gonzales, 33 S.W.3d 821, 822 (Tex. 2000).





[4]         See, e.g., In re H.M.M.,
230 S.W.3d 204, 205 (Tex. App.CHouston [14th
Dist.] 2006, no pet.).





[5]         See, e.g., Stary v. Debord, 967
S.W.2d 352, 352B53 (Tex. 1998).





[6]         See Tex.
Civ. Prac. & Rem. Code Ann. '' 104.001B.009 (Vernon 2005); Tex. Health & Safety
Code Ann. ' 312.007(a) (Vernon 2001); see
also Baylor Coll. of Med. v. Hernandez, 208 S.W.3d 4, 10B11 (Tex. App.CHouston [14th Dist.] 2006, pet.
denied) (reasoning, under section 51.014(a)(5), that although immunity from
individual liability necessarily applies only to individuals, Aan agency or institution may be
shielded from respondeat superior liability for its employee=s negligence if the employee
possesses@ such immunity from liability, so
that Aa motion for summary judgment by
the employer of the putative official may be >based on an assertion= of@ individual immunity from liability Afor the purposes of determining whether an interlocutory
appeal is available, even though the employer may not qualify for@ individual immunity from
liability); see also Baylor Coll. of Med. v. Tate, 77 S.W.3d 467, 470B71 (Tex. App.CHouston [1st Dist.] 2002, no pet.)
(indicating in dictum that Baylor could have invoked appellate jurisdiction
under section 51.014(a)(5) had its doctors moved for summary judgment on basis
of official immunity and had plaintiffs alleged vicarious liability against
Baylor).





[7]         I recognize that we need not follow judicial
dictum if it is erroneous.  See Edwards v. Kaye, 9 S.W.3d 310, 314 (Tex.
App.CHouston [14th Dist.] 1999, pet. denied) (quoting  Palestine
Contractors, Inc. v. Perkins, 386 S.W.2d 764, 773 (Tex. 1964)). 
Respectfully, for the reasons set out above, I believe that the Second Dictum
incorrectly interprets section 51.014(a)(5).  I nonetheless believe that we
must follow the Second Dictum because (1) the Koseoglu court used
similar reasoning to support its actual holding, indicating that it would
interpret all subsections of section 51.014(a) likewise, and (2) the issue is
not so clear-cut as to justify doing otherwise (witness that we, too,
incorrectly employed reasoning like that of the Second Dictum to hold on
original submission that we lacked jurisdiction under section 51.014(a)(8) over
Dr. Klein=s appeal, see Klein v. Hernandez, No.
01-06-00569-CV, 2007 WL 2264539,
at *11 (Tex. App.CHouston [1st Dist.] Aug. 3, 2007), withdrawn, No. 01-06-00569-CV (Tex. App.CHouston [1st Dist.] Apr. 17, 2008, no pet. h.)).





[8]         See Tex.
Health & Safety Code Ann. ' 312.007(a)
(AA . . . supported medical . . .
school . . . is a state agency, and [an] . . . employee of
a . . . supported medical . . . school . . . is
an employee of a state agency for purposes of Chapter 104, Civil Practice
and Remedies Code . . . .@)
(emphasis added).  Texas Civil Practice and Remedies Code chapter 104Centitled, AState
Liability for Conduct of Public Servants@Cprovides
the circumstances under which the State must indemnify its employees, former
employees, and certain individuals under contract with or in the service of
particular state entities for damages, court costs, and attorney=s fees.  See Tex.
Civ. Prac. & Rem. Code Ann. '' 104.001B.009.





[9]         See Tex.
Health & Safety Code Ann. ' 312.007(a)
(A . . . supported medical . . . school . . . is
a state agency, and [an] . . . employee of a . . .
supported medical . . . school . . . is an employee of a
state agency . . . for purposes of determining the liability, if
any, of the person for the person=s acts or omissions while engaged in the coordinated or cooperative
activities of the . . . school . . . .@).





[10]        See id. ' 312.007(b) (Vernon 2001) (AA
judgment in an action or settlement of a claim against a . . .
supported medical . . . school . . . under Chapter 101, Civil
Practice and Remedies Code, bars any action involving the same subject
matter by the claimant against [an] . . . employee of the . . .
school . . . whose act or omission gave rise to the claim as if
the person were an employee of a governmental unit against which the claim was
asserted as provided under Section 101.106, Civil Practice and Remedies Code.@).  The version of section 101.106 that applies to
this case reads likewise.  See Act of May 17, 1985, 69th Leg., R.S., ch.
959, ' 1, 1985 Tex. Gen. Laws 3242, 3305, amended by
Act of June 2, 2003, 78th Leg., R.S., ch. 204, ' 11.05, 2003 Tex. Gen. Laws 847, 886.





[11]        The majority does not state exactly what is
meant by Alimited liability,@
but I am assuming that at least a damages cap is meant.  Cf. Tex.
Health & Safety Code Ann. ' 312.006(a)
(Vernon 2001) (entitled ALimitation on Liability@ and importing Texas Tort Claims Act=s
damages cap for supported medical schools). 





[12]                 ' 312.006.  Limitation on Liability

 

(a)      A . . . supported medical
. . . school . . . engaged in coordinated or cooperative
medical . . . clinical education under Section 312.004, including
patient care and the provision or performance of health or dental services or
research at a public hospital, is not liable for its acts and omissions
in connection with those activities except to the extent and up to the
maximum amount of liability of state government under Section 101.023(a), Civil
Practice and Remedies Code, for the acts and omissions of a governmental
unit of state government under Chapter 101, Civil Practice and Remedies Code.
. . .

 

Tex. Health & Safety Code Ann. ' 312.006(a) (emphasis added); see Tex. Civ. Prac. & Rem. Code Ann. ' 101.023(a) (Vernon 2005) (ALiability of the state government under this chapter
is limited to money damages [in certain amounts].@); Baylor Coll. of Med. v. Hernandez, 208 S.W.3d 4, 11 (Tex.
App.CHouston [14th Dist.] 2006, pet. denied) (interpreting
section 312.006(a) as importing damages cap).





[13]        See Tex.
Health & Safety Code Ann. ' 312.007(a)
(AA . . . supported medical . . .
school . . . is a state agency, and [an] . . . employee of
a . . . supported medical . . . school . . . is
an employee of a state agency for purposes of Chapter 104, Civil Practice and
Remedies Code . . . .@).





[14]        See Tex.
Health & Safety Code Ann. ' 312.007(b)
(AA judgment in an action or settlement of a claim
against a . . . supported medical . . . school . . .
under Chapter 101, Civil Practice and Remedies Code, bars any action involving
the same subject matter by the claimant against [an] . . . employee
of the . . . school . . . whose act or omission gave rise to the
claim as if the person were an employee of a governmental unit against which
the claim was asserted as provided under Section 101.106, Civil Practice and
Remedies Code.@).





[15]        See Tex.
Civ. Prac. & Rem. Code Ann. '' 101.001B.029 (Vernon 2005 & Supp. 2007).





[16]        Baylor=s
and Dr. Klein=s summary-judgment motions relied on Texas Civil
Practice and Remedies Code sections 101.021 and 101.101 of the Texas Tort
Claims Act, which apply only to a governmental unit, not to an individual sued
in his individual capacity, as was Dr. Klein.  See Tex. Civ. Prac. & Rem. Code Ann. '' 101.021, 101.101 (Vernon 2005).